IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID H. KNIGHT, | ) | CIVIL ACTION |
|     Plaintiff | ) | |
| | ) | NO. 03-410 ERIE |
|     v. | ) | |
| | ) | |
| BUILDING MATERIALS CORPORATION | ) | |
| OF AMERICA d/b/a GAF MATERIALS | ) | |
| CORPORATION and/or BUILDING | ) | |
| MATERIALS MANUFACTURING | ) | |
| CORPORATION and JOE RINDERLE, | ) | |
|     Defendants | ) | ELECTRONICALLY FILED |

**BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants BUILDING MATERIALS CORPORATION OF AMERICA d/b/a GAF

MATERIALS CORPORATION and/or BUILDING MATERIALS MANUFACTURING

CORPORATION and JOE RINDERLE, by their attorneys, MacDonald, Illig, Jones & Britton

LLP, file this Brief in Support of Defendants' Motion for Summary Judgment:

I.    <u>Questions Presented</u>

    A.    WHETHER DEFENDANTS GAF MATERIALS AND RINDERLE ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNTS I THROUGH III OF THE SECOND AMENDED COMPLAINT, WHICH SET FORTH PLAINTIFF KNIGHT'S CIVIL RIGHTS CLAIM UNDER 42 U.S.C. § 1981 AND RACE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE PHRA, WHERE KNIGHT HAS

FAILED TO CARRY HIS BURDEN OF REFUTING DEFENDANTS' LEGITIMATE, NON-DISCRIMINATORY REASONS FOR REQUESTING THE DISCONTINUANCE OF KNIGHT'S ASSIGNMENT TO THE GAF MATERIALS FACILITY?

B.    WHETHER DEFENDANTS GAF MATERIALS AND RINDERLE ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNTS I THROUGH III OF THE SECOND AMENDED COMPLAINT, WHICH SET FORTH PLAINTIFF KNIGHT'S HOSTILE WORK ENVIRONMENT CLAIMS UNDER 42 U.S.C. § 1981, TITLE VII AND THE PHRA, WHERE THE ALLEGED CONDUCT WAS NOT PERVASIVE AND SEVERE AND DID NOT DETRIMENTALLY AFFECT OR UNREASONABLY INTERFERE WITH KNIGHT'S WORK PERFORMANCE?

C.    WHETHER DEFENDANTS GAF MATERIALS AND RINDERLE ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNT II OF THE SECOND AMENDED COMPLAINT, WHICH SETS FORTH PLAINTIFF KNIGHT'S RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS UNDER TITLE VII, WHERE THE CLAIMS ARE BARRED BY THE APPLICABLE 90-DAY STATUTE OF LIMITATIONS?

D.    WHETHER DEFENDANT RINDERLE IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNTS II AND III OF THE SECOND AMENDED COMPLAINT, WHICH SET FORTH PLAINTIFF KNIGHT'S RACE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE PHRA, WHERE: (1) KNIGHT HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER TITLE VII AND THE PHRA AGAINST RINDERLE; AND, (2) THERE IS NO INDIVIDUAL LIABILITY UNDER TITLE VII?

II.    <u>Statement of Facts</u>

    A.    <u>Nature of Knight's Claims</u>

This civil action involves the following claims by plaintiff David H. Knight (hereinafter "Knight") against defendants Building Materials Corporation of America d/b/a GAF Materials Corporation and/or Building Materials Manufacturing Corporation (hereinafter "GAF Materials") and Joe Rinderle (hereinafter "Rinderle"), all based upon alleged racial discriminatory practices and a "hostile work environment":

    (1)    Count I (Civil Rights), alleging impairment of the right to make and enforce contracts in violation of 42 U.S.C. § 1981 (hereinafter "§ 1981");

    (2)    Count II (Employment Discrimination), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"); and,

    (3)    Count III (Employment Discrimination), alleging race discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (hereinafter "PHRA").

(Second Amended Complaint, ¶¶ 1-30).

    B.    <u>Knight's History with GAF Materials</u>

Commencing in March of 2000, plaintiff Knight was assigned to work as a CDL licensed truck driver at defendant GAF Materials. (Second Amended Complaint, ¶ 13; Answer to Second

Amended Complaint, ¶ 14; Appendix to Defendants' Motion for Summary Judgment: D. Knight Depo., pp. 41-43 and 73).[1]  Knight was employed by Transportation Unlimited, Inc. and was assigned by Transportation Unlimited to perform work as a leased driver at the Erie, Pennsylvania facility of defendant GAF Materials.  (Answer to Second Amended Complaint, ¶ 14; Appendix:  Answers to Plaintiff's Interrogatories to Defendant (First Set), No. 1-2; D. Knight Depo., pp. 43, 72).  Plaintiff Knight is an individual of the African American race who worked as a leased driver for two years and three months at the GAF Materials facility.  (Second Amended Complaint, ¶ 14; Appendix: D. Knight Depo., pp. 63-64).

During the course of his work at the GAF Materials facility, plaintiff Knight claims that he was subjected to a hostile work environment by his supervisor, defendant Rinderle, and by other co-workers, though he never complained to anyone at GAF Materials or Transportation Unlimited, Inc. about this.  (Second Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 99).  Specifically, Knight claims Rinderle and his co-workers engaged in the following acts of discrimination:

- The work that Knight performed in transporting products from the GAF Materials facility to various storage facilities in the City of Erie was allegedly referred to as "nigger work" by a co-worker on one occasion;

- Knight was allegedly referred to as "Little Black Joe" by Rinderle on two occasions;

- Rinderle allegedly used a manner of speech which Knight claims was intended to mock the speech patterns of African Americans by using a "ghetto" dialect, phrasing, and improper grammar "several" times;

- Rinderle and his co-workers allegedly referred to a storage facility on the east side of Erie as being in "brown town " "several" times;

---

[1]     The Appendix to Defendants' Motion for Summary Judgment will hereinafter be referred to as the "Appendix."

- Knight was allegedly referred to by a co-worker as a "chod," which is alleged to be a Polish term for an African American, "several" times;

- Rinderle allegedly treated Knight differently from his co-workers by not allowing Knight to take home free shingles that were to be discarded by GAF Materials; and,

- Rinderle allegedly withheld preferred runs from Knight and assigned the runs to non-African American drivers with less seniority and experience than Knight.

(Second Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 78-83, 85-89, 92, 95-97, 127-131 and 141-142).

As stated, at no time, did plaintiff Knight notify anyone at defendant GAF Materials or at Transportation Unlimited, Inc. of these alleged acts of discrimination.  (Appendix: D. Knight Depo., pp. 82, 87, 90, 92-93 and 97-99).  He also did not make a charge or file a complaint with the Equal Employment Opportunity Commission (hereinafter "the EEOC") or the Pennsylvania Human Relations Commission (hereinafter "the PHRC") at any time prior to the discontinuance of his assignment to the GAF Materials facility.  (Appendix: D. Knight Depo., pp. 82, 87, 90, 92-93 and 97-98).

Plaintiff Knight alleges that on June 27, 2002, he informed defendant Rinderle that he needed to attend a probation revocation hearing at 8:30 a.m. at the Erie County Courthouse but would return to complete his deliveries.[2]  (Appendix: D. Knight Depo., pp. 103, 105).   Per Knight, Rinderle authorized him to leave work to attend the probation revocation hearing. (Appendix: D. Knight Depo., p. 103).`

At the probation revocation hearing, plaintiff Knight was sentenced to two days of incarceration for failure to attend meetings with his parole officer.  (Appendix: D. Knight Depo., pp. 104 and 106).  It is alleged that Knight then made a telephone call to defendant Rinderle and

---

[2]         In 1997, Knight pled guilty to nine counts of check forgery for which he was incarcerated for eighteen months.  He was subsequently placed on probation.  (Appendix: D. Knight Depo., pp. 31 and 103).

notified him that he would be absent from work for the next couple days. (Appendix: D. Knight Depo., p. 158-159). It is undisputed that Knight did not explain his absence to Rinderle or to anyone else at GAF Materials. (Appendix: D. Knight Depo., pp. 158-159).

It is alleged that plaintiff Knight was suspended by defendant GAF Materials on June 29, 2002 and then discharged on June 31, 2002 under the pretext that he exceeded his permitted cell phone usage and for missing work without calling in. (Second Amended Complaint, ¶ 16). In fact, on or about June 27, 2002, Rinderle and Rinderle's supervisor, Ken Joint, advised Carlo Melia, the Private Fleet Manager of defendant GAF Materials, that Knight had reported to the facility that morning, had departed the facility with the stated intent of returning to complete his deliveries, and had subsequently contacted Rinderle by telephone to advise he would not return for the next couple days. (Appendix: Answers to Plaintiff's Interrogatories to Defendant (First Set), No.s 3, 4, 11). Thereafter, Carlo Melia requested of Transportation Unlimited, Inc., Knight's employer, that Knight no longer be assigned to the Erie, Pennsylvania facility of GAF Materials as a result of his unexplained absences. (Appendix: Answers to Plaintiff's Interrogatories to Defendant (First Set), No.s 3, 4, 11).

C.    Procedural History

1.    The Administrative Proceeding

On January 1, 2003, plaintiff Knight filed an Intake Questionnaire with the EEOC against "G.A.F. Corporation." (Appendix: EEOC Intake Questionnaire). On March 7, 2003, Knight filed a Charge of Discrimination with the EEOC against "G.A.F. Corporation." (Appendix:

EEOC Charge of Discrimination).  The Charge of Discrimination was cross-filed with the PHRC.  (Appendix: EEOC Charge of Discrimination).

On August 29, 2003, following its investigation, the EEOC sent a Dismissal and Notice of Rights to plaintiff Knight at his residence, and Knight acknowledges receipt of it.  (Appendix: EEOC Dismissal and Notice of Rights; D. Knight Depo., pp. 152-153).  The EEOC Dismissal and Notice of Rights informed Knight that he had 90 days in which to file a lawsuit against defendant GAF Materials in federal district court.  (Appendix: EEOC Dismissal and Notice of Rights).

2.    The Federal Court Action

Plaintiff Knight, *pro se*, initiated this employment discrimination action on or about December 15, 2003 by filing a Motion to Proceed In Forma Pauperis, which was denied without prejudice by Order dated December 16, 2003.  (Docket Entries).  On January 6, 2004, Knight filed a Renewed Motion to Proceed In Forma Pauperis, which was granted by Order dated January 7, 2004.  (Docket Entries).

On January 7, 2004, plaintiff Knight filed a Complaint and an Amended Complaint, (Docket Entries, Complaint and Amended Complaint).  On June 8, 2004, Knight filed a Motion for Default based upon the defendants GAF Materials' and Rinderle's alleged failure to timely respond to the Complaint.  (Docket Entries).

On June 18, 2004, defendants GAF Materials and Rinderle filed a Motion to Set Aside Entry of Default on the grounds that plaintiff Knight had failed to properly effectuate service of original process.  (Docket Entries, Motion to Set Aside Entry of Default).  On July 30, 2004,

following oral argument, this Honorable Court entered an Order setting aside the default judgment due to improper service, with leave for Knight to properly serve the pleading within 30 days.  (Docket Entries, Transcript of Hearing on Defendants' Motion to Set Aside Entry of Default, pp. 13-14).   Following service, GAF Materials and Rinderle filed an Answer to Amended Complaint.  (Docket Entries, Answer to Amended Complaint.)

On November 1, 2004, Timothy D. McNair, Esq. entered his Appearance on behalf of plaintiff Knight.  (Docket Entries, Entry of Appearance).  On December 3, 2004, Knight filed a Second Amended Complaint.  (Docket Entries, Second Amended Complaint).  On December 29, 2004, defendants GAF Materials and Rinderle filed the Answer to Second Amended Complaint. (Docket Entries, Answer to Second Amended Complaint).

Following the exchange of written discovery and the deposition of plaintiff Knight, defendants GAF Materials and Rinderle filed Defendants' Motion for Summary Judgment. (Docket Entries, Defendants' Motion for Summary Judgment).  That Motion is pending before this Honorable Court.

III.    Standard for Summary Judgment

A.    Rule 56 Standard – Generally

Rule 56 of the Federal Rules of Civil Procedure must be construed not only with due regard for the rights of plaintiffs asserting claims, but also for the rights of defendants who demonstrate, in the manner provided by the Rule, that the claims are insufficient and should be dismissed without consuming public and private resources at trial.  Celotex Corp. v. Catrett, 477

U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).  *See also* <u>In Re School Asbestos Litigation</u>, 977

F.2d 764, 794 (3d Cir. 1992).  As stated by the Supreme Court of the United States:

> Summary judgment procedure is properly regarded not as a disfavored
> procedural shortcut, but rather as an integral part of the Federal Rules as
> a whole, which are designed "to secure the just, speedy and inexpensive
> determination of every action."

<u>Celotex Corp.</u>, 477 U.S. at 327, 106 S. Ct. at 2555; Fed. R. Civ. P. 1, 56.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must

be granted with respect to a claim:

> ... if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that there is
> no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law.

<u>Lujan v. Nat'l Wildlife Federation</u>, 497 U.S. 871, 884, 110 S. Ct. 3177, 3186 (1990); <u>Celotex</u>

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505, 2509-2510 (1986); Fed. R. Civ. P.  56(c).

Only a genuine issue of material fact will defeat a motion for summary judgment.  A

disputed fact is "material" only if it would affect the outcome of the suit as determined by

substantive law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510

(1986); <u>Grassinger v. Welty</u>, 818 F. Supp. 862, 864 (W.D. Pa. 1992), <u>aff'd</u>, 993 F.2d 224 (3d Cir.

1993).  Factual disputes which are irrelevant or unnecessary will not be considered.  <u>Anderson</u>,

477 U.S. at 248, 106 S. Ct. at 2510.

Furthermore, an issue of fact is "genuine" only if the evidence is such that a reasonable

jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S.

242, 248, 106 S. Ct. 2505, 2510 (1986); <u>Grassinger v. Welty</u>, 818 F. Supp. 862, 864 (W.D. Pa.

1992), <u>aff'd</u>, 993 F.2d 224 (3d Cir. 1993).  In order to avoid summary judgment, a plaintiff must

point to admissible evidence sufficient to establish all elements of a prima facie case under

applicable substantive law.  Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993).  Rule

56 does not require the moving party to negate the elements of the non-moving party's case.

Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 885, 110 S. Ct. 3177, 3187 (1990); Celotex

Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  Rather, as held by the

Supreme Court of the United States:

> The plain language of Rule 56(c) mandates the entry of summary
> judgment, after adequate time for discovery and upon motion, against a
> party who fails to make a showing sufficient to establish the existence of
> an element essential to that party's case, and on which that party will bear
> the burden of proof at trial.

Lujan, 497 U.S. at 884, 110 S. Ct. at 3186, *citing* Celotex, 477 U.S. at 322, 106 S. Ct. at 2552.

   B.    Title VII, the PHRA and Section 1981 Summary Judgment Standard

   The United States Court of Appeals for the Third Circuit applies the McDonnell Douglas

burden shifting analysis to race discrimination claims under Title VII and the PHRA.  *See, e.g.*,

Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410-411 (3d Cir. 1999); Woodson v. Scott

Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997), cert. denied, 522 U.S. 914, 118 S. Ct. 299

(1997); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  The Third Circuit Court also

applies the McDonnell Douglas burden-shifting analytical framework to discrimination claims

under § 1981.    Jones, 198 F.3d at 410; Pamintuan v. Nanticoke Memorial Hospital, 192 F.3d

378, 385 (3d Cir. 1999).

   Furthermore, with respect to these claims, the courts routinely utilize case law under Title

VII, the PHRA and § 1981 interchangeably, where there is no material difference in the question

being addressed, because all of these statutes serve the same purpose – to prohibit employment discrimination. *See, e.g.*, Jones, 198 F.3d at 410; Stewart v. Weis Markets, Inc., 890 F. Supp. 382, 400 (M.D. Pa. 1995).

In addressing motions for summary judgment under Title VII, the PHRA and § 1981, the Third Circuit Court of Appeals has applied the following standard:

- First, the plaintiff must produce evidence sufficient to convince a reasonable factfinder that all of the elements of a prima facie case of race discrimination have been established.

- Second, if the plaintiff establishes a prima facie case, the burden of production (but not the burden of persuasion) shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action.

- Third, if the employer satisfies this burden of articulating a legitimate, nondiscriminatory reason, the plaintiff may survive summary judgment only by submitting evidence from which a reasonable factfinder could either: (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

Jones, 198 F.3d at 410, 412-413; Pamintuan, 192 F.3d at 385-386; Fuentes, 32 F.3d at 764-765.

To satisfy the first prong of Step Three – presenting evidence from which a reasonable factfinder could disbelieve the employer's articulated legitimate, nondiscriminatory reason for the adverse employment action – the Court must determine whether there is sufficient evidence to allow a factfinder to reasonably conclude that the employer's reason, "was a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 764. The Third Circuit Court has made clear that it is insufficient to show, simply, that the employer's decision was wrong or mistaken, stating:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.    Rather, the non-moving plaintiff must

> demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them "unworthy of credence," . . . and hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

Jones, 198 F.3d at 413, *quoting* Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-1109 (3d Cir. 1997) (emphasis added; citations and footnote omitted). *See also,* Fuentes, 32 F.3d at 765.

In this regard, the Third Circuit Court has directed that the question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination. Fuentes, 32 F.3d at 765. Put another way:

> . . . he [the plaintiff] must show not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason.

Keller, 130 F.3d at 1109 (emphasis added). Although this standard places a "difficult burden on the plaintiff," it is based upon "an inherent tension between the goal of all discrimination law and our society's commitment to free decision making by the private sector in economic affairs." Fuentes, 32 F.3d at 765, *citing* Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992).

To satisfy the second prong of Step Three – that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action – the plaintiff must point to evidence that proves discrimination in the same way that critical facts generally are proved – based solely upon the natural probative force of the evidence. Keller, 130 F.3d at 1111; Fuentes, 32 F.3d at 763. This test is consistent with the fact that the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff

remains, at all times, with the plaintiff. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511, 113 S. Ct. 2742, 2749 (1993).

IV.    Argument

      A.    DEFENDANTS GAF MATERIALS AND RINDERLE ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNTS I THROUGH III OF THE SECOND AMENDED COMPLAINT, WHICH SET FORTH PLAINTIFF KNIGHT'S CIVIL RIGHTS CLAIM UNDER 42 U.S.C. § 1981 AND RACE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE PHRA, BECAUSE KNIGHT HAS FAILED TO CARRY HIS BURDEN OF REFUTING DEFENDANTS' LEGITIMATE, NON-DISCRIMINATORY REASONS FOR REQUESTING THE DISCONTINUANCE OF KNIGHT'S ASSIGNMENT TO THE GAF MATERIALS FACILITY.

In the Second Amended Complaint, plaintiff Knight alleges that his termination as a truck driver on June 31, 2002 was because of his race, African American, in violation of Section 1981, Title VII and the PHRA. These race discrimination claims fail as a matter of law because Knight has not carried his burden of refuting defendant GAF Materials' legitimate, nondiscriminatory reason for requesting the discontinuance of Knight's assignment to the GAF Materials facility (*i.e.*, his absenteeism and failure to adequately explain his absence).

1.    GAF Materials has Articulated a Legitimate, Nondiscriminatory Reason for Requesting the Discontinuance of Knight's Assignment to Its Facility

The burden of producing evidence of a legitimate, nondiscriminatory reason for GAF Materials' actions is only one of production, not persuasion, and involves no credibility assessment.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509, 113 S. Ct. 2742, 2748 (1993); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-256, 101 S.Ct. 1089, 1094-1095 (1981).  Once GAF Materials has articulated a legitimate, nondiscriminatory reasons for its actions, the McDonnell-Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination vel non.  St. Mary's Honor Center, 509 U.S. at 511, 113 S. Ct. at 2749; Burdine, 450 U.S. at 254-255, 101 S.Ct. at 1094-1095.  The ultimate burden of persuading the trier of fact that GAF Materials intentionally discriminated against Knight because of his race, African American, remains at all times with Knight.  St. Mary's Honor Center, 509 U.S. at 511, 113 S. Ct. at 2749; Burdine, 450 U.S. at 256, 101 S.Ct. at 1094.

In the present case, absenteeism and the failure to adequately explain the absences are legitimate and non-discriminatory reasons for discharge, or as in this case, for requesting the discontinuance of a leased worker's assignment.  Walton v. Mental Health Association, 168 F.3d 661, 668 (3d Cir. 1999); Magel v. Federal Reserve Bank of Philadelphia, 776 F. Supp. 200, 203 (E.D. Pa. 1991), aff'd, 5 F.3d 1490 (3d Cir. 1993).  See Benoit v. Technical Manufacturing Corp., 331 F.3d 166, 174 (1st Cir. 2003) (absenteeism and conflicts with a supervisor are legitimate and non-discriminatory reasons for discharge); Aranboro v. The Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997) (absenteeism is a legitimate and non-discriminatory grounds for

discharge under Title VII and § 1981); Rush v. McDonald's Corp., 966 F.2d 1104, 1114-1115 (7th Cir. 1992) (an employer has a legitimate and non-discriminatory reason to terminate an employee who was absent for work for three days and did not give a reason for the absence until she returned).

The issue of absenteeism as a legitimate and non-discriminatory reason for discharge has been addressed by two disability cases in the United States Court of Appeals for the Third Circuit and the United States District Court for the Eastern District of Pennsylvania. In Walton v. Mental Health Association, 168 F.3d 661, 665 (3d Cir. 1999), a discharged employee filed a discrimination complaint against her former employer under the Americans with Disabilities Act of 1970, 42 U.S.C. § 12101, *et seq.* The employee alleged that she had been terminated on account of her employer's refusal to accommodate her depression. Walton, 168 F.3d at 665. Following a finding of "No Cause" by the PHRC, the employee filed an action in federal district court. Walton, 168 F.3d at 664-665. The district court granted the employer summary judgment, finding that the plaintiff's excessive absenteeism was a legitimate and non-discriminatory reason for discharge. Walton, 168 F.3d at 668.

On appeal, the United States Court of Appeals for the Third Circuit agreed, recognizing that absenteeism is a legitimate, non-discriminatory reason for discharge. Walton, 168 F.3d at 668. The Court of Appeals went on to affirm the decision of the district court, holding that the employee had failed to present any evidence to show that the legitimate and non-discriminatory reason for discharge was pretextual. Walton, 168 F.3d at 671.

Likewise, in Magel v. Federal Reserve Bank of Philadelphia, 776 F. Supp. 200, 202 (E.D. Pa. 1991), aff'd, 5 F.3d 1490 (3d Cir. 1993), the plaintiff was terminated for excessive absenteeism. She filed a charge of disability discrimination with the PHRC on the grounds she

had asthma, which she alleged her employer failed to accommodate.  <u>Magel</u>, 776 F.Supp. at 202.

After the PHRC dismissed her complaint, she filed an action in United States District Court for

the Eastern District of Pennsylvania.  <u>Magel</u>, 776 F.Supp. at 203.  The district court held that

absenteeism was a legitimate and non-discriminatory ground for discharge, and entered

judgment in favor of the employer.  <u>Magel</u>, 776 F.Supp. at 203.

In <u>Rush v. McDonald's Corp.</u>, 966 F.2d 1104, 1114-1115 (7th Cir. 1992), the United

States Court of Appeals for the Seventh Circuit has also provided guidance on this issue.  In

<u>Rush</u>, 966 F.2d at 1107, an employee, who was African American, had an embarrassing scalp

problem and was unable to report to work for three days.  She instructed her husband to inform

her employer that she was unable to return to work.  <u>Rush</u>, 966 F.2d at 1107.  However, due to

the personal nature of her condition, she asked her husband not to tell her employer of the reason

for her absence from work.  <u>Rush</u>, 966 F.2d at 1107.  When the employee attempted to return to

work three days later, she was immediately terminated by her employer.  <u>Rush</u>, 966 F.2d at

1107.  She then filed a charge of race discrimination with the EEOC, which was referred to the

Indiana Civil Rights Commission.  <u>Rush</u>, 966 F.2d at 1108.

The administrative finding was that the case was without merit.  <u>Rush</u>, 966 F.2d at 1108.

The employee subsequently filed an action with the federal district court, alleging violations of

Title VII, § 1981, ERISA and Indiana common law.  <u>Rush</u>, 966 F.2d at 1106.  Ultimately, the

district court dismissed the case by way of dispositive motions.  <u>Rush</u>, 966 F.2d at 1106.

On appeal, the plaintiff argued that the defendant did not have a legitimate and non-

discriminatory reason to terminate her employment.  <u>Rush</u>, 966 F.2d at 1114.  The United States

Court of Appeals for the Seventh Circuit disagreed, recognizing that the employer was justified

in terminating an employee who was absent from work for three days and who did not give any

explanation of the reasons for her absence until she returned to work. <u>Rush</u>, 966 F.2d at 1114.

The rationale for the court's decision was as follows:

> It almost goes without saying that an employer has a legitimate interest
> in insuring that each employee's work continues at a steady pace to meet
> the employer's production needs. Reliability and promptness are
> important considerations in maintaining a work force. It seems self-
> evident that an employer is acting with a "legitimate, nondiscriminatory
> reason" in terminating an employee who simply fails to report to work
> and does not adequately explain his absence. Thus, we conclude that
> McDonald's made the requisite showing to satisfy its burden under this
> portion of the *McDonnell Douglas-Burdine* test.

<u>Rush</u>, 966 F.2d at 1114-1115.

Applied to this case, it is undisputed that plaintiff Knight was absent from work for a

minimum of two days. This alone was a legitimate and non-discriminatory basis for discharge,

or as in this case, for requesting the discontinuance of his assignment as a leased worker.

Moreover, when Knight did not provide anyone at defendant GAF Materials with an explanation

for his absence, this was an additional legitimate and non-discriminatory reason for his

discontinued assignment.

2. Knight Has Failed to Carry His Burden of Refuting GAF
Materials' Legitimate, Nondiscriminatory Reason for
Requesting the Discontinuance of His Assignment to Its
Facility

Plaintiff Knight has failed to produce evidence that the reasons articulated by GAF

Materials for its decision to request the discontinuance of his assignment to its facility were

pretextual. As repeatedly stated by the Third Circuit Court of Appeals, Knight cannot prevail

simply by showing that this decision was wrong or mistaken because the question is not whether

GAF Materials made the best, or even a sound, business decision; rather, Knight must establish that the reason was so plainly wrong that it could not have been the real reason.  Jones v. School District of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999), *quoting* Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-1109 (3d Cir. 1997); Keller, 130 F.3d at 1109, *citing* Carson v. Bethlehem Steel Corp., 82 F.3d 157, 159 (7th Cir. 1996); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

In the present case, Knight cannot present any affirmative evidence to establish that race was a motivating or determinative cause of GAF Materials' decision to request the discontinuance of his assignment.  To the contrary, the only evidence of record shows that Knight's assignment was discontinued for absenteeism and the failure to explain his absence until he returned to work.

During his deposition, Knight acknowledged that Rinderle was upset when Knight informed him that he was going to be absent from work for the remainder of the week.  Knight testified as follows:

> Q.  Okay.  So what happened thereafter?
>
> A.  I went upstairs to the sheriff's holding area.  I called Joe [Rinderle] and actually I asked Marty Davis, who was at the counter, I asked if I could make a phone call to call my boss.  He said yeah.  I called Joe up and I said Joe, I am kind of screwed here.  I need two days off.  He said – initially he said, you are really fucking me.  I said, okay, I said, but I really need this, this is something I can't really handle.  He said, okay, but you're fucking me.  And that was the extent of the conversation.
>
> Q.  What day of the week was this, Mr. Knight?
>
> A.  Wednesday.
>
> Q.  This was a Wednesday?
>
> A.  Yes.

> Q.    You were asking for what?
>
> A.    Thursday and Friday off.

(Appendix: D. Knight Depo., p. 106-107).

Further, Knight never told anyone at GAF Materials the reason he needed time off.  With respect to the telephone call to Rinderle informing him he would be absent, Knight testified as follows:

> Q.    The telephone call that you made from the sheriff's office on June 26, 2002 that we talked about, did you tell Joe Rinderle that you were incarcerated or imminently to be incarcerated?
>
> A.    No.
>
> Q.    Did you tell him where you had to be the next couple days?
>
> A.    He never asked.
>
> Q.    Did you tell him where you had to be the next couple days?
>
> A.    No, he never asked.

(Appendix: D. Knight Depo., p. 158).

When Knight returned to the GAF Materials facility, the leadman that weekend, Roger Ellis, allegedly informed him that he was being terminated for absenteeism and failing to adequately explain his absence.  Knight testified as follows:

> Q.    So you come to work on what time Saturday?
>
> A.    On time, I think it was 4:00 or 6:00 in the morning.
>
> Q.    With whom did you speak?
>
> A.    Only Roger Ellis.
>
> Q.    Was he the leadman that weekend?

A.  Yes, he was.

Q.  What did he tell you?

A.  That I was done.

Q.  What was the rest of the conversation?

A.  That's the conversation.

Q.  He said you're done and you said, okay, and walked out the door?

A.  I said, I'm done; what's that mean.  He goes, as far as I know you're done.  I said, what are you talking about, Roger.  He said, you're done because nobody knew where you were.  I said, Roger, I called in.  He said, well, you're done.  You got to call Ken on Monday, is what he said, Ken Joint.

(Appendix: D. Knight Depo., p. 111).

The principal evidence that plaintiff Knight relies upon to show pretext consists of racial remarks allegedly make by Rinderle, his supervisor, and by other co-workers.  (Second Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 78, 85-89 and 95-97).  In addition, Knight claims he was not allowed to take home free shingles, and he was assigned less preferred runs by Rinderle. (Second Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 127-131 and 141-142).

With regard to the alleged remarks of Rinderle and Knight's co-workers, it is well established that stray remarks by non-decisionmakers are rarely given great weight.  Gomez v. Allegheny Health Services, Inc., 71 F.3d 1079, 1085 (3d Cir. 1995); Fuentes v. Perskie, 32 F.3d 759, 767 (3d Cir. 1994).  In the present case, it is undisputed that the decision and request to discontinue Knight's assignment to the GAF Materials facility was made by Carlo Melia, the Private Fleet Manager of GAF Materials, not by Rinderle.  (Answers to Plaintiff's Interrogatories to Defendant (First Set), Nos. 3, 4, 11).

Once again, the case of <u>Rush v. McDonalds Corp.</u>, 966 F.2d 1104 (7th Cir. 1997) provides guidance.  In <u>Rush</u>, when the United States Court of Appeals for the Seventh Circuit decided that absenteeism and the failure to explain an absence were legitimate or non-discriminatory reasons for discharge, it turned to the issue of whether the plaintiff could demonstrate pretext.  <u>Rush</u>, 966 F.2d at 1116.  The plaintiff had alleged that her co-workers were biased against African Americans and that they were looking for an excuse to discharge her. <u>Rush</u>, 966 F.2d at 1116.

Relying upon the plurality opinion and Justice O'Connor's concurring opinion in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 109 S.Ct. 1775 (1989), the Court held that the stereotypical remarks of plaintiff's co-workers were insufficient to demonstrate pretext. Specifically, the Court relied upon language from <u>Price Waterhouse</u> which discussed stray remarks in the context of gender discrimination, as follows:

> Remarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision.  The plaintiff must show that the employer actually relied on her gender in making its decision.

<u>Rush</u>, 966 F.2d at 1116, *quoting* <u>Price Waterhouse</u>, 490 U.S. at 251, 109 S.Ct. at 1791.

In this case, plaintiff Knight cannot rely upon the alleged stray remarks of Rinderle and his co-workers because he cannot show that defendant GAF Materials relied upon his race in any manner in making its decision.

Furthermore, there is no evidence of record to support Knight's allegations that he was not allowed to take home free shingles because of his race, or that he was assigned less preferred runs by Rinderle because of his race.  In fact, the voluminous driver delivery records produced by defendants with their Responses to Plaintiff's Requests for Production of Documents Directed

to Defendant (First Set) demonstrate that non-minority drivers were not given better or more preferred runs than Knight.

Accordingly, plaintiff Knight has not refuted the legitimate and non-discriminatory reasons for the request to discontinue his assignment as a leased worker at the GAF Materials facility.

      B.     DEFENDANTS GAF MATERIALS AND RINDERLE ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNTS I THROUGH III OF THE SECOND AMENDED COMPLAINT, WHICH SET FORTH PLAINTIFF KNIGHT'S HOSTILE WORK ENVIRONMENT CLAIMS UNDER 42 U.S.C. § 1981, TITLE VII AND THE PHRA, BECAUSE THE ALLEGED CONDUCT WAS NOT PERVASIVE AND SEVERE AND DID NOT DETRIMENTALLY AFFECT OR UNREASONABLY INTERFERE WITH KNIGHT'S WORK PERFORMANCE.

In the Second Amended Complaint, plaintiff Knight also alleges that he was subjected to a hostile work environment because of his race, African American, in violation of Section 1981, Title VII and the PHRA.  This hostile work environment claim fails as a matter of law because the alleged discriminatory remarks were not sufficiently severe or pervasive to create an objectively hostile or abusive work environment, nor did the alleged conduct detrimentally affect or unreasonably interfere with Knight's work performance.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or

national origin." 42 U.S.C.A. § 2000e-2(a)(1). [3]  The United States Supreme Court, however,

has recognized that Title VII's protection is not limited to "economic" or "tangible"

discrimination, such as the denial or loss of a job or promotion, but it is violated as well by a

"work environment abusive to employees because of their race, gender, religion or national

origin." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 371 (1993).  *See also*

Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 66, 106 S. Ct. 2399, 2405 (1986).

In Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990), the United

States Court of Appeals for the Third Circuit discussed the standard of liability applicable to a

hostile work environment claim and adopted what is known as a "totality of the circumstances"

approach.  This approach was endorsed by the United States Supreme Court in Harris:

> [We] can say that whether an environment is "hostile" or "abusive" can
> be determined only by looking at the circumstances.  These may include
> the frequency of the discriminatory conduct; its severity; whether it is
> physically threatening or humiliating, or a mere offensive utterance; and
> whether it unreasonably interferes with an employee's work performance.

Harris, 510 U.S. at 21, 114 S. Ct. at 371.

Based upon this "totality of the circumstances" approach, the Third Circuit Court has set

forth five factors required to sustain a hostile work environment claim under Title VII: (1) the

plaintiff suffered intentional discrimination because of his or her race, gender, religion or

national origin; (2) the discrimination was pervasive and regular; (3) the discrimination

detrimentally affected the plaintiff; (4) the discrimination would have detrimentally affected a

reasonable person of the same protected class in that position; and, (5) there is a basis for

vicarious liability.  Andrews, 895 F.2d at 1482; See also Weston v. Pennsylvania, 251 F.3d 420,

---

[3]     The analysis for a claim of hostile work environment is the same under the PHRA and Section 1981 as it is
under Title VII.  *See* Jones v. R.R. Donnelly & Sons Co., 124 S. Ct. 1836 (2004) (§ 1981); Rivers v.
Roadway Express, Inc., 114 S. Ct. 1510 (1994) (§ 1981); Weston v. Pennsylvania, 251 F.3d 420 (3d Cir.
2001) (PHRA).

426 (3d Cir. 2001); Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999); West v.

Philadelphia Electric Co., 45 F.3d 744, 753 (3d Cir. 1995).

The five-part test enunciated in Andrews applies both subjective and objective standards.

Andrews, 895 F.2d at 1482.  The use of both subjective and objective standards was explicitly

adopted by the United States Supreme Court in the Harris case.  Harris, 510 U.S. at 21, 114 S.

Ct. at 371 (stating that conduct that is not severe or pervasive enough to create an objectively

hostile or abusive work environment - an environment that a reasonable person would not find

hostile or abusive - is beyond Title VII's purview; likewise, if the victim does not subjectively

perceive the environment to be abusive, and the conduct has not actually altered the conditions of

the victim's employment, then there is no Title VII violation).

The threshold issue for a court with respect to a claim for hostile work environment is

whether the plaintiff has produced evidence of intentional discrimination - the mere fact that a

work environment may prove to be intolerable to a particular employee does not necessarily

implicate Title VII since the civil rights law do not guarantee a working environment free of

stress.  Waite v. Blair, Inc., 937 F. Supp. 460, 468 (W.D. Pa. 1995) (citations omitted).  Along

those lines, the "mere utterance of an epithet which engenders offensive feelings in an employee

does not sufficiently affect the conditions of employment to implicate Title VII."  Harris, 510

U.S. at 21, 114 S. Ct. at 370, *citing* Meritor, 477 U.S. at 67, 106 S. Ct. at 2405-06.

Rather, Title VII is violated when the workplace is "permeated with 'discriminatory

intimidation, ridicule, and insult' that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment."  Harris, 510 U.S. at 21,

114 S. Ct. at 370.  In sum, "simple teasing, offhand comments, and isolated incidents (unless

extremely serious) will not amount to discriminatory changes in the 'terms and conditions' of

employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2287-88

(1998).

During the course of his work at the GAF Materials facility, plaintiff Knight claims that

he was subjected to a hostile work environment by Rinderle and by some co-workers, though he

never complained to anyone at GAF Materials or Transportation Unlimited, Inc.   (Second

Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 99).  Specifically, Knight claims

Rinderle and some co-workers engaged in the following conduct during the two years and three

months he was assigned to the GAF Material facility in Erie, Pennsylvania:

- the work that Knight performed in transporting products from the GAF Materials facility to various storage facilities in the City of Erie was allegedly referred to as "nigger work" by a co-worker on one occasion;

- Knight was allegedly referred to as "Little Black Joe" by Rinderle on two occasions;

- Rinderle allegedly used a manner of speech which Knight claims was intended to mock the speech patterns of African Americans by using a "ghetto" dialect, phrasing, and improper grammar "several" times;

- Rinderle and his co-workers allegedly referred to a storage facility on the east side of Erie as being in "brown town " "several" times;

- Knight was allegedly referred to by a co-worker as a "chod," which is alleged to be a Polish term for an African American, "several" times;

- Rinderle allegedly treated Knight differently from his co-workers by not allowing Knight to take home free shingles that were to be discarded by GAF Materials; and,

- Rinderle allegedly withheld preferred runs from Knight and assigned the runs to non-African American drivers with less seniority and experience than Knight.

(Second Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 78-83, 85-89, 92, 95-97,

127-131 and 141-142).

As a matter of law, these remarks are not severe and pervasive enough to create an objectively hostile or abusive work environment.  As set forth in <u>Harris</u>, 510 U.S. at 27, 114 S.Ct. at 370, the mere utterance of an epithet which engenders offensive feelings in an employee is insufficient to sustain a hostile work environment claim.  The alleged remarks simply do not demonstrate that the workplace was "permeated with "discriminatory intimidation, ridicule, and insult."  <u>Harris</u>, 510 U.S. at 21, 114 S. Ct. at 370.

Furthermore, as stated, there is no evidence of record to support Knight's allegations that he was not allowed to take home free shingles because of his race or that he was assigned less preferred runs because of his race.  In fact, the voluminous driver delivery records produced by defendants with their Responses to Plaintiff's Requests for Production of Documents Directed to Defendant (First Set) demonstrate that non-minority drivers were not given better or more preferred runs than Knight.

Finally, the evidence of record does not establish the requisite subjective impact -- in other words, that the evidence does not establish that the alleged conduct detrimentally affected or unreasonably interfered with Knight's work performance.  *See* <u>Harris</u>, 510 U.S. at 21, 114 S. Ct. at 371; <u>Andrews</u>, 895 F.2d at 1482.  Specifically, Knight has testified as follows:

> Q.    Did the things that we talked about, these comments, prevent you from performing your duties as a driver?
>
> A.    They bothered me.
>
> Q.    Did they prevent you from performing your duties as a driver?
>
>       MR. McNAIR:  I'm going to object to the question as being unduly vague.
>
> Q.    Were you able to come to work every day?
>
> A.    I came to work every day.

Q.    Did you deliver the loads as requested and instructed?

A.    Always did my job.

Q.    Would you agree with me that you were able to perform your duties as a driver?

A.    There's a difference between performing and being in a pleasant atmosphere and not, so sure I could do it.

Q.    Did you complain to anyone at any time while you were assigned to work at GAF MC?

A.    You mean I made this complaint about the whole situation or what kind of complaint are you talking about?

Q.    About what you referred to as the unpleasant atmosphere, the racial comments that we discussed.

A.    Not really.

Q.    Did you quit at any time?

A.    No.

                              *    *    *

Q.    Mr. Knight, it never occurred to you to complain to any superiors of any of these people about the comments or conduct?

      MR. McNAIR:  Object to the relevancy of the question.

Q.    Did it ever occur to you?

A.    To tell you the truth, I could live with it as long as I had my job, but once I lost my job it was unliveable, know what I mean?

Q.    I'm sorry, your answer it was okay -- or was liveable as long as you had your job?

A.    Yes.

(Appendix: D. Knight Depo., pp. 98-99, 165).

Accordingly, based upon the totality of the circumstances, the hostile work environment claims set forth under Section 1981, Title VII and the PHRA fail as a matter of law and should be dismissed.

      C.     DEFENDANTS GAF MATERIALS AND RINDERLE ARE ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNT II OF THE SECOND AMENDED COMPLAINT, WHICH SETS FORTH PLAINTIFF KNIGHT'S RACE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT CLAIMS UNDER TITLE VII, BECAUSE THE CLAIMS ARE BARRED BY THE APPLICABLE 90-DAY STATUTE OF LIMITATIONS.

Defendant GAF Materials and Rinderle are entitled to summary judgment with respect to all of plaintiff Knight's Title VII claims, set forth in Count II of the Second Amended Complaint, because those claims are barred by the 90-day limitations period set forth at 42 U.S.C. § 2000e-5(f)(1).

Section 2000e-5(f)(1) of Title VII provides that if the EEOC dismisses a charge of unlawful discriminatory treatment, it "shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). This 90-day filing requirement for claims arising under Title VII is strictly construed. Seitzinger v. Reading Hospital and Medical Center, 165 F.3d 236, 239 (3d Cir. 1999); Moser v. Hills Department Store, 789 F.2d 251, 253 (3d Cir. 1986). In Moser, the United States Court of Appeals for the Third Circuit ruled that that "[w]hile the 90-day rule is not a jurisdictional predicate, 'in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.'" Moser, 789 F.2d at 253.

Accordingly, in order to be timely, a Title VII claim must be filed within 90 days of the claimant's receipt of an EEOC Dismissal and Notice of Rights.  42 U.S.C. § 2000e-5(f)(1); Baldwin County Welcome Center. v. Brown, 466 U.S. 147, 149, 104 S. Ct. 1723, 1724 (1984); Seitzinger, 165 F.3d at 239; Moser, 789 F.2d at 253.

In Baldwin County Welcome Center. v. Brown, 466 U.S. 147, 104 S. Ct 1723 (1984), a *pro se* plaintiff filed an EEOC charge alleging discriminatory treatment by her former employer in violation of Title VII.  The EEOC issued a Notice of right-to-sue to the plaintiff, who mailed the Notice to the United States District Court for the Southern District of Alabama, where it was received within the 90 day time period.  Baldwin, 466 U.S. at 148, 104 S. Ct. at 1724.  On the 130th day after receipt of the right-to-sue letter, the *pro se* plaintiff filed an "Amended Complaint" which was served upon the defendant.  Baldwin, 466 U.S. at 148, 104 S. Ct. at 1724.

The District Court held that the plaintiff had forfeited her right to pursue her Title VII claim because of her failure to file a complaint within 90 days.  The United States Court of Appeals for the Eleventh Circuit reversed the District Court, stating that the filing of the right-to-sue letter satisfied and/or tolled the 90-day statutory limitation period.  Baldwin, 466 U.S. at 148-149, 104 S. Ct. at 1724.

Ultimately, the United States Supreme Court reversed the Court of Appeals, ruling that the filing of the Notice of right to sue was not sufficient to commence an action under the Federal Rules of Civil Procedure.  Baldwin, 466 U.S. at 149-150, 104 S. Ct. at 1724-1725.  In addition, the Supreme Court found nothing in the record, including the plaintiff's *pro se* status, which warranted the application of the doctrine of equitable tolling.  Baldwin, 466 U.S. at 151, 104 S. Ct. at 1725.

The Supreme Court reasoned this was not a case in which the claimant had received inadequate notice, in which the court had led the plaintiff to believe she had done everything required of her, or in which affirmative misconduct on the part of the defendant lulled the plaintiff into inaction. Baldwin, 466 U.S. at 151, 104 S. Ct. at 1725-1726. The Court ruled that a plaintiff's failure to act diligently cannot invoke equitable principles to excuse that lack of diligence and concluded that, "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." Baldwin, 466 U.S. at 152, 104 S. Ct. at 1726.

In Moser v. Hills Department Store, 789 F.2d 251, 253 (3d Cir. 1986), a discharged employee filed suit against his former employer 91 days after the employee's attorney received a Notice of right to sue from the EEOC. Moser, 789 F.2d at 252. The employer filed a Motion to Dismiss on the basis that the suit was untimely filed, and the United States District Court for the Western District of Pennsylvania (J. McCune,) granted the Motion. Moser, 789 F.2d at 252.

On appeal, the United States Court of Appeals for the Third Circuit affirmed the decision of the District Court, ruling that that the Complaint was untimely because it was filed more than 90 days after receipt of the right to sue letter. Moser, 789 F.2d at 253. In addition, the plaintiff had failed to state any equitable reason for disregarding the statutory requirement. Moser, 789 F.2d at 253.

In the present case, plaintiff Knight failed to file any civil action against any defendant within the 90-day limitations period. On August 29, 2003, the EEOC issued a Dismissal and Notice of Rights to Knight, which expressly informed him that he had 90 days from receipt of the Notice to pursue his Title VII claims in court. (Appendix: EEOC Dismissal and Notice of Rights). Therefore, Knight was required to file any Title VII claims by December 1, 2003,

presuming that Knight received the Dismissal and Notice of Rights on or before September 1, 2003,[4]

  During his deposition, plaintiff Knight acknowledged that the EEOC sent the Dismissal and Notice of Rights to his correct residential address and that he received it. Specifically, Knight testified as follows:

> Q. What did the EEOC do?
>
> A. They did an investigation.
>
> Q. Then what did they do?
>
> A. They sent me a letter.
>
> Q. What did it say?
>
> A. What did it say? It said that -- and my understanding was that there's a gray area because of the employment situation, and that I would have to go to federal court to get it straight.
>
>  [DEFENDANT'S EX. 11, EEOC DISMISSAL AND NOTICE OF RIGHTS, marked for identification.]
>
> Q. Okay. I will show you what we will mark as 11, three pages. This is a letter directed to you from the EEOC, is that what you are talking about, Mr. Knight?
>
>  MR. McNAIR: Three pages?
>
>  MS. BECK: No, but the attachments are.
>
> Q. Is that your address, the Waterford address, is that your correct address?
>
> A. Yes.
>
> Q. That was your address in August of 2003?
>
> A. Yes.

---

[4] It is the general rule that a mailed document is presumed to be received within three days after its mailing. *See* Fed.R.Civ.P. 6(e); <u>Baldwin County Welcome Center.</u>, 466 U.S. at 148 n.1, 104 S. Ct. at 1724 n.1 (1984); <u>Seitzinger</u>, 165 F.3d at 239; <u>Scary v. Philadelphia Gas Works</u>, 202 F.R.D. 148, 150 (E.D. Pa. 2001).

*    *    *

Q.    Did you receive the two attachments of the letter, dismissal notice of rights and then the document -- well, let me ask you one at a time. Did you receive the dismissal and notice of rights?

A.    Yes.

Q.    And then the Filing Suit under Title VII of the Civil Rights Act or the Americans with Disabilities Act?

A.    Yes.

Q.    It would appear those were directed to you per the address -- per your address in Waterford; is that right?

A.    Yes.

Q.    You received those there?

A.    Yes.

(Appendix: D. Knight Depo., pp. 151-152, 152-153; EEOC Dismissal and Notice of Rights).

At the earliest, the present lawsuit was initiated on December 15, 2003 with the filing of the first Motion to Proceed in Forma Pauperis, 14 days after the expiration of the 90-day limitations period. (Docket Entries). Accordingly, plaintiff Knight's claims under Title VII are time-barred by the 90-day statute of limitations.

D.    DEFENDANT RINDERLE IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO COUNTS II AND III OF THE SECOND AMENDED COMPLAINT, WHICH SET FORTH PLAINTIFF KNIGHT'S RACE DISCRIMINATION CLAIMS UNDER TITLE VII AND THE PHRA, BECAUSE: (1) KNIGHT HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER TITLE VII AND THE PHRA AGAINST RINDERLE; AND, (2) THERE IS NO INDIVIDUAL LIABILITY UNDER TITLE VII.

Defendant Knight's Title VII and PHRA claims against defendant Rinderle fail as a matter of law because Knight did not invoke or exhaust his administrative remedies against Rinderle and because there is no individual liability under Title VII.

1.     Knight Failed to Invoke and Exhaust the Mandatory Administrative Procedures Against Rinderle Under Title VII and the PHRA_____

The Charge of Discrimination that plaintiff Knight filed with the EEOC, and which was cross-filed with the PHRC, names "G.A.F. Corporation" as the sole respondent.  Knight's failure to invoke his administrative remedies with regard to defendant Rinderle now bars any claims against Rinderle under Title VII or the PHRA.

Section 959(a) of the PHRA requires any person who claims to be aggrieved by an alleged unlawful discriminatory practice to make, sign, and file with the Pennsylvania Human Relations Commission a verified Complaint, in writing, which must state the name and address of the employer alleged to have committed the unlawful discriminatory practice, as well as the particulars thereof, and which also must contain such other information as may be required by the Pennsylvania Human Relations Commission.  43 P.S. § 959(a).

This administrative filing requirement under the PHRA is strictly construed.  As stated by the Third Circuit Court of Appeals in Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1996), cert. denied, 522 U.S. 914, 118 S. Ct. 299 (1997):

> To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days of the alleged act of discrimination.  43 Pa.S. §§ 959(a), 962.  If a plaintiff fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA.  The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that

> "persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act." *Vincent v. Fuller Co.*, 532 Pa. 547, 616 A.2d 969, 974 (1992); *see also Fye v. Central Transp. Inc.*, 487 Pa. 137, 409 A.2d 2 (1979); *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (1989); *Richardson v. Miller*, 446 F.2d 1247, 1248 (3d Cir. 1971) ("Since plaintiff failed to file a charge with the respective Commissions within the appropriate time periods, he is now foreclosed from pursuing the remedies provided by the Acts.").

Woodson, 109 F.3d at 925 (emphasis added).

In Woodson, a plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended. Woodson, 109 F.3d at 916, 925. The plaintiff admitted that he had not made a similar filing with the PHRC. Woodson, 109 F.3d at 925. Accordingly, the Court of Appeals for the Third Circuit affirmed the dismissal of the plaintiff's claims under the PHRA for failure to invoke and exhaust the required administrative procedure. Woodson, 109 F.3d at 929.

In Kepple v. GPU, Inc., 2 F. Supp.2d 730, 733, 739 (W.D. Pa. 1998) (Smith, J.), a plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, claiming employment discrimination based on religion, age, and gender, but failed to allege that he filed a Complaint with the Pennsylvania Human Relations Commission asserting state law violations under the PHRA. In dismissing the plaintiff's claims under the PHRA, the District Court stated:

> Before a federal court can exercise jurisdiction over such a claim [under the PHRA], the complainant must have exhausted his administrative remedies through the Pennsylvania Human Relations Commission ("PHRC"). This requirement is not met by filing with the federal EEOC.

Kepple, 2 F. Supp.2d at 739.  *See also* Clark v. Hess Trucking Co., 879 F. Supp. 524 (W.D. Pa. 1995) (Ambrose, J.).

Likewise, it is well established that a party is required to exhaust his or her administrative remedies with the EEOC as a prerequisite to filing suit under Title VII.  Robinson v. Dalton, 107 F.3d 1018, 1020-1021 (3d Cir. 1997); Foster v. JLG Industries, 372 F. Supp.2d 792, 802 (M.D. Pa. 2005); Dougherty v. Henderson, 155 F. Supp.2d 269, 274 (E.D. Pa. 2001).  Exhaustion requires both consultation with the agency and filing a formal EEOC complaint against a given party within the required times.  Robinson, 107 F.3d at 1021 (3d Cir. 1997); Foster, 372 F. Supp.2d at 802.

In the present case, plaintiff Knight did not invoke or exhaust any administrative remedies under Title VII or the PHRA with regard to defendant Rinderle, a statutory prerequisite to pursuing such claims.  To the contrary, in the EEOC Intake Questionnaire and EEOC Charge of Discrimination, Knight identified "G.A.F. Corporation" as the sole respondent.  (Appendix: EEOC Intake Questionnaire; EEOC Charge of Discrimination).  Accordingly, Knight's claims against Rinderle under Title VII and the PHRA, set forth in Counts II and III of the Second Amended Complaint, must be dismissed.


2.    No Individual Liability Under Title VII


In addition, the Title VII claims set forth against defendant Rinderle in Count II of the Second Amended Complaint fail as a matter of law because Rinderle is not an "employer" within the meaning of Title VII and cannot be held individually liable under that statute.

In Count II, plaintiff Knight's race discrimination claim is based upon 42 U.S.C. § 2000e-2(a)(1) which provides:

> It shall be an unlawful employment practice <u>for an employer</u> –
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or …

(Emphasis added). By its express terms, 42 U.S.C. § 2000e-2(a)(1) imposes liability only upon an "employer." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff Knight's Title VII claim against defendant Rinderle is controlled by the case of <u>Sheridan v. E.I. DuPont de Nemours & Co.</u>, 100 F.3d 1061 (3d Cir. 1996) (en banc), <u>cert. denied</u>, 521 U.S. 1129, 117 S. Ct. 2532 (1997). In <u>Sheridan</u>, a former employee filed a Title VII lawsuit against both her former employer and her former supervisor, presenting several claims of sex discrimination and retaliation. <u>Sheridan</u>, 100 F.3d at 1063. In affirming the dismissal of all claims under Title VII against the individual supervisor, the United States Court of Appeals for the Third Circuit noted that 42 U.S.C. § 2000e-2(a) expressly prohibits unlawful employment practices only by an "employer" and joined the clear majority of the other Circuit Courts which had considered the same question and held that individual employees cannot be liable under Title VII. <u>Sheridan</u>, 100 F.3d at 1077-1078.

As a result, in <u>Kachmar v. Sungard Data Systems, Inc.</u>, 109 F.3d 173, 175, 183-184 (3d Cir. 1997), the Third Circuit Court affirmed the dismissal of a Title VII claim of retaliatory discharge against two individuals – a General Counsel and a Corporate Vice President of Human Resources – because there is no individual liability under Title VII. *See also* <u>Chatterjee v. School District of Philadelphia</u>, 170 F. Supp.2d 509, 515-516 (E.D. Pa. 2001) ("Congress did not intend to hold individual employees liable under Title VII," *quoting* <u>Sheridan</u>); <u>McHenry v.</u>

Pennsylvania State System of Higher Education, 50 F. Supp. 2d 401, 408 (E.D. Pa. 1999) (individual employees may not be held liable under Title VII).

Accordingly, in the case at bar, plaintiff Knight's Title VII claims against defendant Rinderle, set forth in Count II of the Second Amended Complaint, fail as a matter of law and must be dismissed.

V.     Conclusion

Wherefore, defendants Building Materials Corporation of America d/b/a GAF Materials Corporation and/or Building Materials Manufacturing Corporation and Joe Rinderle request this Honorable Court to enter summary judgment in its favor and against plaintiff David H. Knight with respect to all claims set forth in the Second Amended Complaint.

Respectfully submitted,


/s/ Lisa Smith Presta
Lisa Smith Presta
Pennsylvania Bar ID No. 65527
Walter E. "Stormy" Deacon III
Pennsylvania Bar ID No. 82961
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7600
Fax:  (814) 454-4647
lpresta@mijb.com
wdeacon@mijb.com


Attorneys for Defendants
   Building Materials Corporation of America d/b/a
   GAF Materials Corporation and/or Building
   Materials Manufacturing Corporation and Joe
   Rinderle

900747

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing Brief in Support of Defendants' Motion for Summary Judgment was served upon the following counsel for plaintiff David H. Knight, via First-Class United States Mail, this 25th day of July 2005:

> Timothy McNair, Esq.
> 821 State Street
> Erie, PA 16501-1316

/s/ Lisa Smith Presta
Lisa Smith Presta