IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAVID H. KNIGHT,                       )
    Plaintiff          )
           )  CIVIL ACTION
    v.                 )  No.   03-410 Erie
           )
BUILDING MATERIALS           )
CORPORATION OF AMERICA d/b/a )
GAF MATERIALS CORPORATION    )
and/or BUILDING MATERIALS    )
MANUFACTURING CORPORATION    )
and JOE RINDERLE,            )
    Defendants         )

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND FOR SUMMARY JUDGMENT

Defendants have raised four justifications for dismissal of plaintiff's Complaint, only one of which would result in complete dismissal; the other three would result only in partial summary judgment.

Defendants have moved to dismiss Plaintiff's Title VII count, claiming that plaintiff failed to file his lawsuit within ninety days of receipt of the EEOC Notice of Right to Sue. It appears this is correct and that the plaintiff's Title VII claim should be dismissed. This in no way affects plaintiff's claims under the Pennsylvania Human Relations Act or the Civil Rights Act, 42 U.S.C. § 1981. There is no allegation of untimeliness regarding plaintiff's claims under the PHRA and the Civil Rights Act of 1866.

Defendants also claim that plaintiff failed to exhaust his administrative remedies against Joseph Rinderle and that there is no individual liability under Title VII.

This case meets the four-part test set forth in *Glus v. G.C. Murphy Co.*, 629 F.2d 248

(3rd Cir. 1980), *vacated on other grounds*, 451 U.S. 935, 101 S. Ct. 2013, 68 L.Ed.2d 321 (1981), in that:  (1) Rinderle's role could, with little effort, be ascertained at the time of the filing of the EEOC Complaint; (2) Rinderle's interests are so similar to GAF's interests that for the purpose of obtaining voluntary conciliation and compliance, it would be unnecessary to include him as a party in the EEOC proceeding; (3) Rinderle's "absence" from the EEOC proceeding did not result in any actual prejudice to his interests; Rinderle doesn't allege that he did not have actual notice; and (4) it is clear that Rinderle's relationship with the complainant, as plaintiff's supervisor, was through GAF.    Therefore, this Court has jurisdiction over Rinderle.

Defendants claim that the conduct of GAF and Rinderle was not so pervasive and severe as to sustain a hostile work environment claim.    Defendants' summary of the evidence of hostile comments and actions consumes almost a full page of its Brief. Plaintiff testified that references to his race were made on a frequent basis and he was more frequently assigned to what was referred to as "nigger work."    A reasonable African American in plaintiff's position would believe that the working environment was hostile and abusive, taking into consideration the cumulative effect of all of the incidents.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 126 L. Ed.2d 295, 114 S. Ct. 367 (1993).

Plaintiff did complain to Ben Clement, his former supervisor at GAF, about his treatment.    At the time, Clement remained at GAF. (Plaintiff deposition, p. 161 - 167). Clement did not advise him to file a formal complaint, or even that there was a complaint procedure.  Plaintiff could not complain to Rinderle, and was concerned about retaliation

if he did.  Id.

Defendants also claim the plaintiff cannot demonstrate that the defendants' asserted non-discriminatory reason for removing Knight from his employment was pretextual. The employer initially took the position that the plaintiff had prior attendance problems, did not call in and did not report for two days or "even call dispatch to tell them he would not be there" (August 28, 2003 letter to Paul Southworth from Glen Pauley, quoting Carlo Melia of GAF), but now admit that plaintiff did call in, and have produced no evidence of any prior attendance problems. (Defendants' Answers to Plaintiff's Interrogatory No. 4, August 25th letter) The falsity of the defendants' initially tendered non-discriminatory reason is, in itself, sufficient to preclude summary judgment, as a reasonable jury could easily find that it is false and therefore, from that fact alone, infer actual discriminatory animus. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000). ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *id,* at 147-148)

In sum, summary judgment should not be granted except as to plaintiff's Title VII claim and the case should be tried as to both defendants, GAF and Rinderle, on plaintiff's PHRA and § 1981 Counts.

## ARGUMENT

1.    **DEFENDANT RINDERLE HAD ACTUAL NOTICE OF THE EEOC FILING, SUFFERED NO ACTUAL PREJUDICE, HAD THE OPPORTUNITY TO SEEK ADJUSTMENT OF PLAINTIFF'S GRIEVANCE THROUGH THE ADMINISTRATIVE PROCESS, AND THEREFORE NEED NOT HAVE BEEN NAMED IN THE INITIAL EEOC CHARGE.**

In *Glus v. G.C. Murphy Co.*, 629 F.2d 248 (3rd Cir. 1980), *vacated on other grounds*, 451 U.S. 935, 101 S. Ct. 2013, 68 L.Ed.2d 321 (1981), the District Court had imposed liability for contribution on a Local Union in addition to the International. The Local union appealed, claiming that since it was not named in the initial EEOC charge, it could not be held liable for contribution. The Court found that, because the Local had interests so similar to those of the International, that is suffered no prejudice and that it was represented by the same counsel, the Court had jurisdiction over it. The Third Circuit set forth a four-part test to determine whether or not the failure to specifically name a party in an EEOC charge deprived the District Court of jurisdiction. These factors are:

1.    Whether the role of the unnamed party could through reasonable effort by the Complainant be ascertained at the time of the filing of the EEOC Complaint;

2.    Whether, under the circumstances, the interests of a named (party) are so similar as the unnamed parties that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceeding;

3.      Whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

4.      Whether the unnamed party has in some way represented to the Complainant that its relationship with the Complainant is to be through the named party.

Applying these factors to this case, it is clear that, although the plaintiff clearly was aware of Rinderle's role in creating, fostering, and perpetuating the hostile work environment, he did name Rinderle in the initial Intake Questionnaire and Complaint, although not as a party.  Judge Robreno of the Eastern District of Pennsylvania, relying on *Schafer v. Board of Public Education*, 903, F.2d 243 (3rd Cir. 1990),  held in *Cronin v. Martindale Andres and Company,* 159 F.Supp. 2d 1 (E.D. Pa. 2001), in applying the *Glus* factors, a plaintiff is to be given more latitude if they are unrepresented.  The Third Circuit in *Schafer, supra,* relied on the *Glus* factors and reversed a district court's grant of summary judgment finding that the commonality of interest and notice provisions of *Glus* had been satisfied and therefore, the Court properly had jurisdiction over the defendant.

In this case, the plaintiff clearly named Defendant Rinderle as the wrongdoer in both his initial Intake Questionnaire and his Complaint.  Rinderle clearly had notice of the proceedings.

Defendants do not argue that Rinderle has no liability under §1981 or the PHRA. It is clear that he does.  The administrative exhaustion provision of the PHRA are satisfied by the EEOC investigation.

2.    **THE EVIDENCE ESTABLISHES THAT A REASONABLE JURY COULD CONCLUDE THAT THE CONDUCT OF THE DEFENDANTS WAS SO PERVASIVE AND SEVERE AS TO CONSTITUTE A CHANGE IN PLAINTIFF'S WORKING CONDITIONS.**

A court in considering a request for dismissal of a hostile work environment claim must consider the cumulative effect of the incidents claimed to constitute a hostile environment. *Lynch v. New Deal Delivery Serv.*, 974 F. Supp. 441 (D. NJ 1997). In this case, taking the plaintiff's evidence and testimony in the light most favorable to him, as the Court must do, comments concerning plaintiff's race were frequent and were made by numerous employees, including plaintiff's direct supervisor.

Plaintiff was frequently referred to as a "chod." "Chod" is purportedly a Polish word for a black person and carries a derogatory connotation. Plaintiff deposition, p. 89, Plaintiff also testified that on at least two occasions, Defendant Rinderle referred to plaintiff as "Little Black Joe." (Plaintiff deposition, 86, 88) Rinderle also spoke to plaintiff "like he [Rinderle] was from the street" affecting African American dialect, a manner of speech plaintiff found offensive. Rinderle did this several times (Plaintiff deposition, p. 89, 92) This language, coupled with Rinderle's refusal to assign plaintiff to the more desirable, i.e., longer, runs would lead any reasonable person to believe there is a connection between plaintiff's race and his treatment. The fact that local deliveries were referred to as "nigger work" and that this work was more frequently assigned to the plaintiff further supports a conclusion that the work environment was hostile and

offensive.[1]

It is easy for children of privilege who are white, well educated, and professional to dismiss the claims of a person of color that they are being treated in a discriminatory fashion. The analysis must be based on how a reasonable person similarly situated to the plaintiff, i.e., an African American truck driver, would have reasonably responded, rather than how whether a white professional would *assume* that these comments would not constitute an alteration of the minority's working conditions. If there is any doubt, the question should be submitted to the jury. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986).

In this case, it is clear that the plaintiff's working conditions were different. First, as set forth in plaintiff's Affidavit, he was given a higher proportion of the local hauling, or "nigger work." Further, he has made out a clear case of disparate treatment where he was terminated for one instance of missing work even though he had called in, while other, non-African American employees, were not disciplined or terminate for missing work and not calling in. Third, he has demonstrated that the Employer's initial stated

---

[1]    Defendant claims, in its Brief, at page 26, that "Voluminous driver delivery records produced by defendants withe the Responses to Plaintiff's Request for Production of Documents Directed to Defendant (First Set) demonstrate that non-minority drivers were not given better or more preferred runs than Knight." This assertion is not supported by any admissible analysis on the part of the defendants and is clearly belied by the plaintiff's analysis of those voluminous documents as set forth in his declaration. Plaintiff calculates that he drove 16% fewer loaded miles than the white drivers did during the last two months of his employment.

reason for termination, missing two days work without calling in and for having previous attendance problems is, simply, false, as defendants admit in their discovery responses.

As set forth above, and under the precedent most relied on by defendants, *Harris v. Forklift Systems, Inc., supra,* one must look at the cumulative effect of the harassment. In this case, the employer claims that the harassment was minor and constituted a single "epithet." This is clearly not the case, but even if it were, the use of a single epithet coupled with the disparate treatment clearly raises an inference of racial discrimination motivating the employer's decision to terminate the plaintiff. The fact that the plaintiff's job duties were distinctly different under the supervision of Rinderle is sufficient to support the hostile work environment claim.

Defendant's Motion for Summary Judgment should be denied.

3. **PLAINTIFF HAS ESTABLISHED THAT DEFENDANTS' PROFFERED REASON FOR TERMINATING HIS EMPLOYMENT IS FALSE, RAISING AN INFERENCE OF ILLEGAL DISCRIMINATION**

As set forth above, the employer's initially proffered justification for terminating Plaintiff was that he had prior attendance problems and missed two days of work without calling in. This is set forth by Glen Pauley, quoting Carlo Melia, of GAF, in Pauley's letter to the Equal Employment Opportunity Commission dated August 25, 2003. Further, as set forth in Plaintiff's declaration, other contract drivers, including Lenny VanCise, missed work without calling in and were not terminated. The statement of Carlo Melia is an admission by GAF and Pauley can testify to it at trial.

-8-

In discovery, Plaintiff asked defendants:

> 4.    "Please set forth each instance upon which you claim plaintiff did not report on time for work or missed work without a legitimate excuse, identifying any documents which describe, refer, or relate to any such incidents and identifying each person involved in discovering, investigating, and/or imposing counseling or discipline on plaintiff as the result of any such incidents."

In response, the defendant mentions only the June 27, 2002 incident, and mentions no other incident. In its resspose to this interrogatory, defendants admit that plaintiff *did* call and advise that he would be absent for two days. This is in direct contradiction to the statement GAF made to Pauley in 2002. One of these statements is false. It does not matter which one. The falsity of the proffered reason is in itself sufficient to raise a jury question. *Reeves, supra.*

## CONCLUSION:

Plaintiff does not oppose dismissal of his Title VII claim. Plaintiff's evidence, taken in the light most favorable ton Plaintiff, establishes a jury question as to the existence of a hostile or oppressive work environment. Defendant Rinderle did not suffer any prejudice by not being formally named as a party in the EEOC proceedings. Plaintiff's evidence establishes disparate treatment in work assignments and in discipline, and the employer's initially proffered reason for plaintiff's termination was false.

Summary judgment should be denied as to Plaintiff's 42 U.S.C. §1981 and PHRA counts.

Respectfully submitted,

-9-

LAW OFFICES OF TIMOTHY D. McNAIR

By:_____
     Timothy D. McNair, Esquire
     Attorneys for Plaintiff
     821 State Street
     Erie, Pennsylvania 16501
     (814) 452-0700
     tmcnair@velocity.net
     PA ID# 34304

LAW OFFICES OF:

# Timothy D. McNair

ATTORNEY AND COUNSELOR AT LAW

August 26, 2005

Clerk, United States District Court
17 South Park Row
Erie, PA 16501

       **Re:**   **David H. Knight v. G.A.F. Corp. and Joe Rinderle**
             **W.D. Pa. No. 03-CV-410 (Erie)**

Dear Clerk:

Enclosed for filing please find the original of Plaintiff's Response to Defendants' Motion for Summary Judgment, with attachments, Plaintiff's brief in Opposition to Defendants' Motion for Summary Judgment and a cd-rw containing these documents in .pdf format in the above-captioned matter.

Thank you.

Very truly yours,

LAW OFFICES OF TIMOTHY D. McNAIR

By: Timothy D. McNair, Esquire

TDM/t
Enclosures

cc:   David H. Knight
      Lisa Smith Presta, Esquire