IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID H. KNIGHT,          )<br>          Plaintiff          )<br>                                          )<br>     v.                                )<br>                                          )<br>BUILDING MATERIALS       )<br>CORPORATION OF AMERICA d/b/a  )<br>GAF MATERIALS CORPORATION  )<br>and/or BUILDING MATERIALS )<br>MANUFACTURING CORPORATION )<br>and JOE RINDERLE,          )<br>          Defendants     ) | CIVIL ACTION<br>No.   03-410 Erie |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, David H. Knight, by his attorneys, Law Offices of Timothy D. McNair, and in response to the motion for summary judgment filed by defendants, respectfully represents:

1. The evidence establishes a basis to conclude that a reasonable jury could find that Plaintiff worked under a hostile or offensive working environment.

2. Plaintiff's counts under the Pennsylvania Human relations Act 43 P.S. § 951, *et seq* and the Cicvil Rights Act of 1866, 42 U.S.C. § 1981 were timely filed.

3. The defendant's initially proffered reason for terminating Plaintiff's employment was false.

4. Plaintiff worked under disparate working conditions with regard to work assignments.

5. Attached hereto is Plaintiff's declaration, a copy of the letter of August 25, 2003 from Glen Pauley to the EEOC, reflecting statements of Carlo Melia, of GAF, and a copy of plaintiff's calculations

regarding his work assignments.

  WHEREFORE, Plaintiff respectfully requests that defendants' motions be denied.

            Respectfully submitted,

            LAW OFFICES OF TIMOTHY D. McNAIR

            By: _____
            Timothy D. McNair, Esquire
            Attorneys for Plaintiff
            821 State Street
            Erie, Pennsylvania 16501
            (814) 452-0700
            tmcnair@velocity.net
            PA ID# 34304

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID H. KNIGHT,<br>       Plaintiff<br><br>       v.<br><br>BUILDING MATERIALS<br>CORPORATION OF AMERICA d/b/a<br>GAF MATERIALS CORPORATION<br>and/or BUILDING MATERIALS<br>MANUFACTURING CORPORATION<br>and JOE RINDERLE,<br>       Defendants | CIVIL ACTION<br>No.  03-410 Erie |

## DECLARATION OF DAVID H. KNIGHT

I, David H. Knight, hereby make the following declaration for whatever purposes it may serve.

1.    I am David H. Knight, plaintiff in this action, seeking damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act.

2.    During the period of time that I was employed by defendant, GAF, through Transportation Unlimited, I regularly attended work.  I did not miss any work except for the two days which served as the pretext for my termination.

3.    During the period of time I worked for GAF through Transportation Unlimited, and during the time I was under the supervision of Defendant Rinderle, other, non-African American truck drivers also employed by GAF through Transportation

Unlimited missed work without calling in advance or after the fact and were not terminated or disciplined. Specifically, Leonard Van Cise did this on several occasions.

4. The stated reason for my termination, according to statements made by Carlo Melia, of GAF to Glen Pauley was that I had had prior attendance problems and that I missed work and failed to call in. I note in the filings made by GAF (Answers of Defendant to Plaintiff's interrogatories 3 and 4) that they now acknowledge that I called in and are unable to cite any example of attendance problems prior to June 27, 2002. I conclude that they are acknowledging this because I have identified a witness in my Initial Disclosure and interrogatories who will testify that he observed me to call my employer. Thus, I conclude that GAF's initial defense of this matter was based on a false statement.

5. I reiterate and reaffirm the statements made in my deposition that local delivery work was commonly referred to as "nigger work." I also reaffirm the statements made in my deposition and in the Complaint that Defendant Rinderle referred to me as "Little Black Joe."

6. After Defendant Rinderle became my supervisor, I began to be assigned more frequently than the other drivers to the local delivery work referred to as "nigger work." Specifically, I have reviewed and analyzed the driver logs produced by Defendant GAF during the time I worked for GAF. These logs demonstrate that, prior to Rinderle becoming my supervisor, the number of loaded miles I drove was generally the same as or more than the other drivers. After Rinderle became my supervisor, my "loaded miles" per day declined to as much as 16% less than those of the other drivers, except those who

-2-

requested shorter runs. The reason my loaded miles declined was that I was doing more of the local deliveries which involve shorter trips and more time spent loading, unloading, and performing other tasks in connection with the local delivery. GAF failed to provide a complete response to my request for production, omitting records for several weeks, so a complete analysis is impossible. However, information provided has enabled me to set forth a comparison of two similar periods, the first under the supervision of Ben Clement for 18 weeks beginning January 1, 2001 and the second under the supervision of Joe Rinderle from February 25, 2002 until my termination. It is clear that my loaded miles were reduced after I became supervised by Rinderle. Defendants haven't provided any evidence to dispute this.

7.   It is not true that I did not complain about the race discrimination while it was occurring. I spoke to Ben Clement, my former supervisor, who remained employed by GAF. No action was taken, nor did he make me aware of any complaint procedure. I was bothered by the epithets and frequent references to my race which were made in Rinderle's presence. Rinderle was in a position to, but did not take any action. I did not complain to Rinderle because he was my direct supervisor, in a position to retaliate against me and he was the source of a number of the epithets and comments. I had no reason to believe that a complaint to Rinderle would be effective. Further, at that time, I was trying to get Rinderle to balance out the assignment of runs and I felt that a complaint would be counterproductive to this. The altered terms of my employement were preferable to unemployment, so I did not resign.

8.      I was not permitted to take free shingles. Other, non African American contract drivers, including Lenny VanCise and Larry Murphy, were. On several occasions, I presented paperwork to Joe Rinderle to get shingles, but it was never completed by Rinderle. I was, however, ordered by Rinderle to go to the sand dock and get shingles which were given to other, non African American employees. This process was controlled by Rinderle, who was required to sign the paperwork, but who always refused to. This occurred during the time I was being subjected to racial comments and different treatment.

The foregoing declaration is made under penalty of perjury.

Dated: <u>August 26, 2005</u>

David H. Knight



**COMPLETE PERSONNEL LOGISTICS, INC.**

August 25, 2003

Mr. Paul Southworth
Equal Employment Opportunity Commission

In reference to employee David Knight, SS#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.

Mr. Knight was hired March 20, 2000 by Transportation Unlimited and assigned to our customer G.A.F. Materials in Erie, Pennsylvania.

Several months after Mr. Knight was hired, G.A.F. had contacted us complaining that Mr. Knight had an at fault accident in their equipment and they also had other issues as far as his reporting to work on time as he was required to do.

After these initial reports from our customer, Mr. Knight's attendance violations and reporting on time seemed to become less frequent than when he first started working but was an ongoing problem until June, 2002.

In June of 2002, Carlo Melia (Transportation Manager for G.A.F.) phoned our offices and said that he wanted Mr. Knight removed from the account. We of course asked Mr. Melia why he was requesting Mr. Knight's removal, and he told us because of his attendance again. He then explained that Mr. Knight had left work after beginning his workday and did not report the following 2 days and did not even call dispatch to tell them he would not be there.

We then notified Mr. Knight and explained to him, because he left work in the middle of a work day and did not report or call the following 2 days, "even though Mr. Knight knew he was scheduled to work", we had no alternative but to remove him from the G.A.F. account.

Mr. Paul Southworth
August 25, 2003
Page Two

We have since "lost" the G.A.F. Business and have included the cancellation notice with the fax.

If I can be of further assistance, please don't hesitate to call.

Sincerely,

*Glen Pauley*

Glen Pauley
Director Human Resources
Complete Personnel Logistics

start 2-25-02    under JOE

| Denise Fornash | Larry Murphy | David Knight | Lenny VanCise |
|---|---|---|---|
| 44 | 99.78 | 77.60 | 78.24 |
| 15.43 | 75.13 | 73.53 | 82.91 |
| 17.80 | 88.18 | 79.40 | 59.88 |
| 19.44 | 66.71 | 55.50 | 89.71 |
| 21.33 | 66.20 | 28.88 | 18.33 |
| 53.64 | 106.20 | 56.35 | 68.95 |
| 35.57 | 39.63 | 17.36 | 30.29 |
| 41.90 | 47.22 | 71.43 | 52.27 |
| 38.77 | 109.09 | 8.16 | 21.82 |
| 32.56 | 58.60 | 23.58 | 16 |
| 49.20 | 87.63 | 57.75 | 68.43 |
| 78.90 | 50.60 | 34 | 74.59 |
| 42.40 | 60.36 | 67.33 | 34 |
| 570.37 | 1044.57 | 738.51 | 891.16 |

START 1-01-01                     under Ben

| Denise Fornash | Larry Murphy | David Knight | Lenny Van Cise |
|---|---|---|---|
| 64.71 | 79.73 | 17.72 | 14.87 |
| 7.44 | 55.88 | 35.28 | 50.30 |
| 6 | 44.30 | 25.46 | 31.47 |
| 5.52 | 58.66 | 96.82 | 133.38 |
| 16.96 | 250.83 | 102.83 | 36.50 |
| 53.97 | 107.82 | 89.70 | 17.52 |
| 3.24 | 38.95 | 42.50 | 36.61 |
| 13.90 | 132.19 | 87.50 | 73.91 |
| 19.33 | 101.20 | 180.46 | 52.12 |
| 16.82 | 31.52 | 2.63 | 2.50 |
| 14.73 | 13.52 | 3.33 | 7.69 |
| 75.25 | 235.67 | 29.28 | 79.73 |
| 26.83 | 103.04 | 119.00 | 50.86 |
| 71.41 | 186.71 | 92.96 | 29.52 |
| 58.88 | 92.70 | 22.95 | 20.86 |
| 64.44 | 96.18 | 63.54 | 5.28 |
| 56.50 | 53.06 | 21.30 | 8.70 |
| 31.96 | 54.05 | 17.31 | 5.37 |
| TOTAL 597.42 | 1816.67 | 1020.54 | 630.19 |