IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID H. KNIGHT,<br>　　Plaintiff | )　CIVIL ACTION<br>)<br>)　NO. 03-410 ERIE |
| 　　　　v. | )<br>) |
| BUILDING MATERIALS CORPORATION<br>OF AMERICA d/b/a GAF MATERIALS<br>CORPORATION and/or BUILDING<br>MATERIALS MANUFACTURING<br>CORPORATION and JOE RINDERLE,<br>　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)　ELECTRONICALLY FILED |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants BUILDING MATERIALS CORPORATION OF AMERICA d/b/a GAF MATERIALS CORPORATION and/or BUILDING MATERIALS MANUFACTURING CORPORATION and JOE RINDERLE, by their attorneys, MacDonald, Illig, Jones & Britton LLP, file this Reply Brief in Support of Defendants' Motion for Summary Judgment:

I.　Introduction

This civil action involves the following claims by plaintiff David H. Knight (hereinafter "Knight") against defendants Building Materials Corporation of America d/b/a GAF Materials Corporation and/or Building Materials Manufacturing Corporation (hereinafter "GAF

PDF created with pdfFactory trial version www.pdffactory.com

Materials") and Joe Rinderle (hereinafter "Rinderle"), all based upon alleged racial discriminatory practices and a "hostile work environment":

    (1)    Count I (Civil Rights), alleging impairment of the right to make and enforce contracts in violation of 42 U.S.C. § 1981 (hereinafter "§ 1981");

    (2)    Count II (Employment Discrimination), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII"); and,

    (3)    Count III (Employment Discrimination), alleging race discrimination in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* (hereinafter "PHRA").

(Second Amended Complaint, ¶¶ 1-30).

On or about August 26, 2005, plaintiff Knight made the following filings in opposition to Defendants' Motion for Summary Judgment and Brief in Support of Defendants' Motion for Summary Judgment:

    (1)    Plaintiff's Response to Defendants' Motion for Summary Judgment (hereinafter "Plaintiff's Response);[1] and,

    (2)    Plaintiff's Brief in Opposition to Defendants' Motions for Partial Summary Judgment and for Summary Judgment (hereinafter "Plaintiff's Brief").

(Docket Entries).

---

[1] Attached to Plaintiff's Response were: the Declaration of David Knight; an August 25, 2003 letter from Glen Pauley of Complete Personnel Logistics, Inc. to the EEOC; and, Knight's handwritten calculations (two pages) regarding the four drivers' loaded miles while working with a former acting supervisor and then with Rinderle.

- 2 -

PDF created with pdfFactory trial version www.pdffactory.com

II. Reply Argument

      A. THE <u>GLUS II</u> EXCEPTION, WHICH AUTHORIZES THIS HONORABLE COURT TO ASSERT JURISDICTION OVER A TITLE VII CLAIM AGAINST A PREVIOUSLY UNNAMED PARTY, DOES NOT EXCUSE KNIGHT'S FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES AGAINST RINDERLE UNDER THE PHRA.

In his Brief, plaintiff Knight relies upon <u>Glus v. G.C. Murphy Co.</u>, 629 F.2d 248 (3d Cir. 1980), <u>vacated on other grounds</u>, 451 U.S. 935, 101 S. Ct. 2013 (1981) (hereinafter "<u>Glus II</u>"), for the proposition that this Honorable Court should excuse his failure to exhaust his administrative remedies under the PHRA by naming Rinderle as a defendant in his EEOC charge.[2] Despite that contention, Knight's claims against Rinderle under the PHRA should be dismissed because the <u>Glus II</u> exception does not apply to this case.

In <u>Glus II</u>, 629 F.2d at 250 (3d Cir. 1980), a class action was filed on behalf of several female employees who alleged sex discrimination against their employer, their local union and their international union. The international union had previously sought dismissal of the plaintiff's claim on the grounds that the class representative had only named her employer and the local union in the EEOC charge. <u>Glus v. G.C. Murphy Co.</u>, 562 F.2d 880, 888 (3d Cir. 1977) (hereinafter "<u>Glus I</u>").

In <u>Glus I</u>, 562 F.2d at 888, the United States Court of Appeals for the Third Circuit held that due to certain limited circumstances, it was appropriate to assert jurisdiction over the

---

[2] In Plaintiff's Response, Knight concedes that his Title VII claims against all defendants are time barred under the 90-day statute of limitations. Therefore, the issue is whether the <u>Glus II</u> exception preserves Knight's PHRA claims against Rinderle.

- 3 -

PDF created with pdfFactory trial version www.pdffactory.com

international union even though it had not been named in the original EEOC charge. The court based this narrow exception on the difficulty of the class representative in ascertaining the identity of all proper parties during the administrative proceeding, stating as follows:

> In the instant case, Glus in her complaint to the EEOC charged her employer and her local union with sex discrimination. Whether she could foresee at that stage in the proceedings the necessity and desirability of adding the International we cannot say. It would seem reasonable from the standpoint of the complainant that if voluntary compliance could not be obtained through the EEOC from her employer or her local union the addition of the International would make little, if any, difference.

Glus I, 562 F.2d at 888.

Accordingly, the Court held that jurisdiction would be proper over the international union in the federal court action if four factors were met:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
>
> 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
>
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and,
>
> 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Glus I, 562 F.2d at 888.

Following remand, the district court concluded that jurisdiction over the international union was proper under this four-factor analysis. Glus v. G.C. Murphy Co., 1979 WL 15431 (W.D. Pa. Feb. 14, 1979). Glus II then affirmed the decision of the district court, excusing the

- 4 -

PDF created with pdfFactory trial version www.pdffactory.com

plaintiff's failure to exhaust her administrative remedies under Title VII.  Glus II, 629 F.2d at 250 (3d Cir. 1980).

In the present case, the narrow exception set forth in Glus II does not apply.  First, the long line of cases cited in the Defendants' Brief all stand for the proposition that the administrative filing requirement of the PHRA is to be strictly construed as a mandatory prerequisite to an action in federal court.  *See*, 43 P.S. § 959; Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1996), cert. denied, 522 U.S. 914, 188 S. Ct. 299 (1997); Kepple v. GPU, Inc., 2 F. Supp.2d 730, 733, 739 (W.D. Pa. 1995); Clark v. Hess Trucking Co., 879 F. Supp. 524 (W.D. Pa. 1995).  Nothing in Glus II contradicts this line of authority.

Further, this is not a case in which the plaintiff is seeking to obtain jurisdiction over a person or entity whose role could not be easily ascertained at the time the EEOC charge was filed.  To the contrary, at all times, plaintiff Knight was aware of Rinderle's existence and had every opportunity to exhaust his administrative remedies against Rinderle under the PHRA.  His failure to do so precludes his cause of action in federal court.

In addition, Knight's failure to name Rinderle as a respondent to the EEOC charge prevented Rinderle from pursuing and obtaining an administrative ruling specific to himself.  The EEOC found that Transportation Unlimited, Inc., rather than GAF Materials, was Knight's employer.  As an unnamed party, Rinderle did not have the opportunity to address allegations raised against him, and his interests have been prejudiced as a result.  Accordingly, Knight's claims against Rinderle under the PHRA should be dismissed because the Glus II exception does not apply to this case.

PDF created with pdfFactory trial version www.pdffactory.com

>    B.   THE ALLEGED HOSTILE WORK ENVIRONMENT WAS NOT PERVASIVE OR SEVERE AND DID NOT DETRIMENTALLY AFFECT OR UNREASONABLY INTERFERE WITH KNIGHT'S WORK PERFORMANCE.
>
>         1.   Knight Has Failed To Show That The Alleged Hostile Work Environment Was Pervasive Or Severe

In his Brief, plaintiff Knight contends that the cumulative effect of GAF Materials' alleged conduct supports a hostile work environment claim. Once again, Knight claims Rinderle and some co-workers engaged in the following conduct during the two years and three months he was assigned to the GAF Materials facility in Erie, Pennsylvania:

- the work that Knight performed in transporting products from the GAF Materials facility to various storage facilities in the City of Erie was allegedly referred to as "nigger work" by a co-worker on one occasion;[3]

- Knight was allegedly referred to as "Little Black Joe" by Rinderle on two occasions;

- Rinderle allegedly used a manner of speech which Knight claims was intended to mock the speech patterns of African Americans by using a "ghetto" dialect, phrasing, and improper grammar "several" times;

- Rinderle and his co-workers allegedly referred to a storage facility on the east side of Erie as being in "brown town " "several" times;

- Knight was allegedly referred to by a co-worker as a "chod," which is alleged to be a Polish term for an African American, "several" times;

- Rinderle allegedly treated Knight differently from his co-workers by not allowing Knight to take home free shingles that were to be discarded by GAF Materials; and,

- Rinderle allegedly withheld preferred runs from Knight and assigned the runs to non-African American drivers with less seniority and experience than Knight.

---

[3] See Affidavit of Leonard Van Cise electronically filed September 2, 2005. Per Van Cise, another leased driver assigned to the GAF Materials facility, this occurred a single time, and it was well understood at GAF Materials that such remarks were not tolerated.

- 6 -

PDF created with pdfFactory trial version www.pdffactory.com

(Second Amended Complaint, ¶ 15; Appendix: D. Knight Depo., pp. 78-83, 85-89, 92, 95-97, 127-131 and 141-142).

The facts of numerous other cases involving much more egregious conduct than that alleged by Knight demonstrate that Knight have failed to meet the high standard in place to establish a hostile work environment claim. In short, Section 1981, Title VII and the PHRA were never intended to become a "general civility code for the workplace." *See* Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-2284 (1998); Martin v. Allegheny Airlines, Inc., 126 F. Supp.2d 809, 820 (M.D. Pa. 2000), aff'd, 261 F.3d 492 (3d Cir. 2001).

Accordingly, the courts in all of the following cases rejected the plaintiff's claim of hostile work environment:

- Kidd v. MBNA America Bank, N.A., 93 Fed. Appx. 399 (3d Cir. 2004) (co-worker making disparaging remarks regarding plaintiff's national origin and other threatening comments including references to a gun were insufficient to establish cause of action of hostile work environment);

- Manatt v. Bank of America, 339 F.3d 792 (9th Cir. 2003) (co-workers' actions towards Asian employee, including telling jokes in which phrase "China man" was used, reference to the Chinese as "communists from Beijing" and incident where co-worker and supervisor pulled their eyes back with their fingers to mock the appearance of Asians were insufficient to establish a prima facie case of hostile work environment);

- Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839 (8th Cir. 2002) (alleged incidents of racial harassment by co-workers, including racial epithets, obscene gestures, the circulation of a racist message, and presence of racist graffiti in the workplace were insufficient to establish prima facie case of hostile work environment);

- Dotson v. Norfolk Southern R.R. Co., 52 Fed. Appx. 655 (6th Cir. 2002) (co-workers' alleged acts of using initials "KKK" on work documents, using word "ungawa" as in Tarzan movies, and calling employee names such as "tar baby" were insufficient to establish cause of action of hostile work environment);

PDF created with pdfFactory trial version www.pdffactory.com

- Boyer v. Johnson Matthey, Inc., 2005 WL 35893 (E.D. Pa. 2005) (supervisor's use of abusive language towards plaintiff, supervisor calling plaintiff a "bigot," references that plaintiff "was going to work like a nigger," that there were "too many Indians and not enough chiefs," and use of terms in workplace such as "camel jockey," "dot head" and "towel head" used every day were insufficient to establish hostile work environment);

- Ocasio v. Lehigh Valley Family Health Center, 368 F. Supp.2d 370 (E.D. Pa. 2003), aff'd, 92 Fed. Appx. 876 (3d Cir. 2004) (alleged actions against Hispanic medical assistant, including co-workers and supervisors giving her the cold shoulder, imposing excessive discipline, providing her with inadequate training, hiding equipment from her, referencing Hispanic employees as "Spanish people," joking about work ethic of Puerto Ricans, and emails making fun of Spanish pronunciations were insufficient to establish hostile work environment);

- Francis v. Chemical Banking Corp., 62 F. Supp.2d 948 (E.D. N.Y. 1999), aff'd, 213 F.3d 626 (2d Cir. 2000), cert. denied, 532 U.S. 949, 121 S. Ct. 1419 (2001) (alleged incidents including supervisor's description of a group of African-American employee as "fucking moolies," reference by supervisor regarding another employee that "that nigger is a disgrace to all of yous," disparaging remark regarding the United Negro College Fund, and written statement found on plaintiff's desk stating "All niggers should go back to Africa with a Jew under each arm," were insufficient to establish hostile work environment).

In each of these cases, it was held that the alleged misconduct was not sufficiently pervasive or severe to establish a hostile work environment. Similarly, Knight's allegations regarding the racial remarks allegedly made by Rinderle and co-workers fail to rise to the level necessary to sustain such a claim.

Further, Knight's claim that he was withheld preferred runs by Rinderle has no foundation in fact and is not supported by any evidence of record. Specifically, Knight alleges that after Rinderle became the Supervisor of the Shipping Department, Knight's "loaded miles" (over-the-road deliveries) were reduced more than the non-African American drivers. (See Declaration of David H. Knight, ¶ 6, attached to Plaintiff's Response). Knight attaches two pages of handwritten numbers to his Declaration in evident support for this assertion, but no

PDF created with pdfFactory trial version www.pdffactory.com

explanation as to the manner of calculation or the source of the numbers is provided. (See Affidavit of Joe Rinderle electronically filed September 2, 2005).

Any reasonable review of the extensive driver logs and time records of each of the four drivers, produced in their entirety to plaintiff Knight during the course of discovery, confirms that after Rinderle became the Shipping Department Supervisor, Knight's loaded miles <u>continued to be the second highest</u> out of the four leased drivers. (See Affidavit of Joe Rinderle electronically filed September 2, 2005, the summary charts attached thereto as Attachment 1, and the driver logs attached thereto as Attachments 4 and 5).

Further, the driver logs and time records confirm that after Rinderle became the Shipping Department Supervisor, Knight's average hours <u>increased from third to second</u> out of the four leased drivers, and his average hours were <u>reduced the least</u> of all four drivers. (See Affidavit of Joe Rinderle electronically filed September 2, 2005, the summary charts attached thereto as Attachments 2 and 3, and the time records attached thereto as Attachments 6 and 7).

Accordingly, Knight's hostile work environment claims under Section 1981, Title VII and the PHRA should be dismissed.

> 2. Knight Has Failed To Show That The Alleged Hostile Work Environment Detrimentally Affected Or Interfered With His Work Performance

Plaintiff Knight does not provide any evidence that the alleged hostile work environment detrimentally affected and unreasonably interfered with his work performance. *See* <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367, 371 (1993); <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1482 (3d Cir. 1990). Knight himself has testified that he raised a

PDF created with pdfFactory trial version www.pdffactory.com

complaint about the alleged conduct on only one occasion. Knight alleges he complained to Ben Clement, the acting Supervisor prior to Rinderle, when Knight heard his co-employee refer to the job of transporting products from the GAF Materials facility to various storage facilities in the City of Erie as "nigger work." (Appendix: D. Knight Depo., pp. 78-83).

The only evidence is that the alleged harassment did not detrimentally affect plaintiff Knight or unreasonably interfere with his work. Knight testified as follows:

> Q. Did the things that we talked about, these comments, prevent you from performing your duties as a driver?
>
> A. They bothered me.
>
> Q. Did they prevent you from performing your duties as a driver?
>
> MR. McNAIR: I'm going to object to the question as being unduly vague.
>
> Q. Were you able to come to work every day?
>
> A. I came to work every day.
>
> Q. Did you deliver the loads as requested and instructed?
>
> A. Always did my job.
>
> Q. Would you agree with me that you were able to perform your duties as a driver?
>
> A. There's a difference between performing and being in a pleasant atmosphere and not, so sure I could do it.
>
> Q. <u>Did you complain to anyone at any time while you were assigned to work at GAF MC</u>?
>
> A. <u>You mean I made this complaint about the whole situation or what kind of complaint are you talking about</u>?
>
> Q. <u>About what you referred to as the unpleasant atmosphere, the racial comments that we discussed</u>.
>
> A. <u>Not really</u>.
>
> Q. Did you quit at any time?

- 10 -

PDF created with pdfFactory trial version www.pdffactory.com

>
> A. No.
>
> * * *
>
> Q. <u>Mr. Knight, it never occurred to you to complain to any superiors of any of these people about the comments or conduct</u>?
>
> MR. McNAIR: Object to the relevancy of the question.
>
> Q. <u>Did it ever occur to you?</u>
>
> A. <u>To tell you the truth, I could live with it as long as I had my job, but once I lost my job it was unliveable, know what I mean</u>?
>
> Q. I'm sorry, your answer it was okay – or was liveable as long as you had your job?
>
> A. Yes.

(Appendix: D. Knight Depo., pp. 98-99, 165) (emphasis added).

To the extent Knight now claims that the alleged conduct did detrimentally affect him or unreasonably interfere with his work performance, those claims should be stricken. It is well established that a party may not create a material issue or fact to defeat summary judgment by filing an affidavit disputing his sworn testimony without demonstrating a plausible explanation for the conflict. <u>Baer v. Chase</u>, 392 F.3d 609, 624 (3d Cir. 2004); <u>Hackman v. Valley Fair</u>, 932 F.2d 239, 241 (3d Cir. 1991). While this Honorable Court must draw all justifiable inferences in favor of the non-moving party, the court is not required to turn a blind eye to contradictions in the non-movant's affidavit and prior deposition testimony. <u>Martin v. Merrell Dow Pharmaceuticals, Inc.</u>, 851 F.2d 703, 706 (3d Cir. 1998); <u>Howell v. Sam's Club #8160/Wal-Mart</u>, 959 F.Supp. 260, 264-265 n. 7 (E.D. Pa. 1997), <u>aff'd</u>, 141 F.3d 1153 (3d Cir. 1998).

The clear rationale for this rule is that the objectives of summary judgment would be seriously impaired if the court were not free to disregard the conflicting affidavit. <u>Hackman</u>, 932 F.2d at 241; <u>Martin</u>, 851 F.2d at 706. Otherwise, the non-movant would be able to defeat

PDF created with pdfFactory trial version www.pdffactory.com

summary judgment by merely filing a "sham" affidavit.  Baer, 392 F.3d at 624; Martin, 851 F.2d at 706.

In the present case, Knight testified during his deposition that the alleged conduct did not detrimentally affect or unreasonably interfere with his work performance.  To the extent he now claims otherwise in an affidavit or declaration, those claims should be disregarded.

      C.    THE ALLEGED INCONSISTENCIES IN DEFENDANT GAF MATERIALS' GROUNDS FOR REQUESTING DISCONTINUANCE OF KNIGHT'S ASSIGNMENT DO NOT DEMONSTRATE PRETEXT, NOR DOES THE ALLEGED FAVORABLE TREATMENT OF HIS NON-AFRICAN AMERICAN CO-WORKERS.

      1.    The Alleged Inconsistencies In The Grounds For GAF Materials' Request That Knight's Assignment Be Discontinued Do Not Show Pretext

In his Brief, plaintiff Knight claims that the alleged inconsistencies between the double hearsay statement of Carlo Melio, which is reported in the August 25, 2003 letter of Glen Pauley attached to Plaintiff's Response, and the current position of defendant GAF Materials demonstrates pretext.  Knight misconstrues the position that GAF materials is required to take for purposes of summary judgment.[4]

In the August 2, 2003 letter, Glen Pauley of Complete Personnel Logistics, Inc. purportedly stated that Carlo Melia stated that GAF Materials requested Knight no longer be

---

[4] Further, it is not proper to consider, on summary judgment, evidence that would not be admissible at trial. Pamintuan v. Nanticoke Memorial Hospital, 192 F.3d 378, 387-388 (3d Cir. 1999); State Farm Insurance Co. v. Taylor, 293 F. Supp.2d 530, 537 (E.D. Pa. 2003), aff'd, 116 Fed. Appx. 350 (3d Cir. 2004).  Rather in order to avoid summary judgment, a plaintiff must point to admissible evidence sufficient to establish all elements of a prima facie case under applicable substantive law. Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993).

- 12 -

PDF created with pdfFactory trial version www.pdffactory.com

assigned to its facility because Knight "had left work after beginning his workday and did not report the following 2 days and did not even call dispatch to tell them he would not be there."  In their Brief, however, GAF Materials and Rinderle accept, for purposes of summary judgment, the testimony that Knight called in to advise he would not report to work, though Knight admits he failed to provide any reason or explanation.

During his deposition, plaintiff Knight testified he notified Rinderle by telephone that he would be absent from work for the next couple of days.  (Appendix: D. Knight Depo., pp. 158-159).  For purposes of summary judgment, defendant GAF Materials is required to accept the plaintiff's version of the facts as the non-moving party, as well as all reasonable inferences thereof.  *See*, Hunt v. Cromartie, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551-1552 (1999); Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990).

The fact that defendant GAF Materials is required to accept this version of the facts for purposes of the Motion for Summary Judgment does not in any way demonstrate falsehood or that its grounds for the requested discontinuance of Knight's assignment were pretextual.  To the contrary, this position is taken to establish that, even if all of Knight's contentions are accepted as true, Knight cannot set forth a viable claim for race discrimination.

> 2. There Is No Evidence of Record to Support Plaintiff's Allegations Regarding the Alleged Favorable Treatment Of His Non-African American Co-Workers

Finally, in support of his allegation that GAF Materials' grounds for requesting the discontinuance of Knight's assignment to its Erie facility are pretextual, Knight states that "other

PDF created with pdfFactory trial version www.pdffactory.com

non-African American truck drivers also employed by GAF through Transportation Unlimited missed work without calling in advance or after the fact and were not terminated or disciplined. Specifically, Leonard Van Cise did this on several occasions." (See Declaration of David H. Knight attached to Plaintiff's Response).

Plaintiff Knight cites no evidence of record to support this bald assertion, possibly because there is no evidence of record to support it. A non-moving party must point to such evidence since mere allegations are insufficient to oppose summary judgment. As stated, in order to avoid summary judgment, a plaintiff must point to admissible evidence sufficient to establish all elements of a prima facie case under applicable substantive law. Clark v. Modern Group Ltd., 9 F.3d 321, 326 (3d Cir. 1993).

The only evidence of record on this issue is directly contrary to Knight's assertions. Leonard Van Cise -- who is also no longer assigned to the GAF Materials' facility -- called GAF Materials each time he was unable to report to work and provided the reason he could not report to work. (See Affidavit of Leonard Van Cise, electronically filed September 2, 2005). As the Supervisor of the Shipping Department, Rinderle was contacted when a leased driver was unable to report to work, and Rinderle was aware if and when a driver did not report to work. (See Affidavit of Joe Rinderle, electronically filed September 2, 2005). Contrary to Knight's allegation, there was no time when Van Cise failed to report to work and did not call in to advise he would not be present and why he would not be present. (See Affidavit of Joe Rinderle).

Moreover, as set forth above, the driver logs and time records for the four leased drivers confirm that Knight was not treated less favorably than his non-African American co-workers, and in fact, fared better in many instances than them. (See Affidavit of Joe Rinderle; the

PDF created with pdfFactory trial version www.pdffactory.com

summary charts attached thereto as Attachments 1, 2 and 3; the driver logs attached thereto as Attachments 4 and 5; and, the time records attached thereto as Attachments 6 and 7).

Accordingly, plaintiff Knight has failed to demonstrate pretext on the basis that his non-African American co-workers were treated more favorably since the evidence of record does not support such an allegation.

### III.   Conclusion

Wherefore, defendants Building Materials Corporation of America d/b/a GAF Materials Corporation and/or Building Materials Manufacturing Corporation and Joe Rinderle request this Honorable Court to enter summary judgment in their favor and against plaintiff David H. Knight with respect to all claims set forth in the Second Amended Complaint.

PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,


/s/ Lisa Smith Presta
Lisa Smith Presta
Pennsylvania Bar ID No. 65527
Walter E. "Stormy" Deacon III
Pennsylvania Bar ID No. 82961
MacDONALD, ILLIG, JONES & BRITTON LLP
100 State Street, Suite 700
Erie, Pennsylvania 16507-1459
(814) 870-7600
Fax:  (814) 454-4647
lpresta@mijb.com
wdeacon@mijb.com

Attorneys for Defendants
  Building Materials Corporation of America d/b/a GAF Materials Corporation and/or Building Materials Manufacturing Corporation and Joe Rinderle

906988

- 16 -

PDF created with pdfFactory trial version www.pdffactory.com

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply Brief in Support of Defendants' Motion for Summary Judgment was served upon the following counsel for plaintiff David H. Knight, via First-Class United States Mail, this 2nd day of September 2005:

>Timothy McNair, Esq.
>821 State Street
>Erie, PA 16501-1316

>>s/ Lisa Smith Presta
>>Lisa Smith Presta

PDF created with pdfFactory trial version www.pdffactory.com