IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID H. KNIGHT,<br>Plaintiff | ) CIVIL ACTION<br>)<br>) NO. 03-410 ERIE |
| v. | )<br>) |
| BUILDING MATERIALS CORPORATION<br>OF AMERICA d/b/a GAF MATERIALS<br>CORPORATION and/or BUILDING<br>MATERIALS MANUFACTURING<br>CORPORATION and JOE RINDERLE,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) ELECTRONICALLY FILED |

## AFFIDAVIT OF JOE RINDERLE

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | )<br>) ss:<br>) |
| COUNTY OF ERIE | |

Joe Rinderle, being duly sworn according to law, deposes and says:

1. I am the Supervisor of the Shipping Department for GAF Materials Corporation located at 218 West Bayfront Parkway, Erie, PA 16507.

2. I became the Supervisor of the Shipping Department at GAF Materials on or about September 3, 2001. David Knight was one of the leased drivers employed by Transportation Unlimited, Inc. and assigned to the Erie, Pennsylvania facility of GAF Materials. A GAF Materials employee, Ben Clement, was acting as the Supervisor of the Shipping Department before me. Knight has alleged that he was not subject to unlawful discrimination while working with Clement, but was subject to discrimination while working with me from

- 2 -

September 3, 2001 through June 26, 2002, after which Knight was no longer assigned to the GAF Materials facility.

3.  I have reviewed the Declaration of David H. Knight and the two pages of handwritten numbers attached to Plaintiff's Response to Defendant's Motion for Summary Judgment. In Paragraph 6 of the Declaration, Knight states that he has reviewed and analyzed the driver logs produced by GAF Materials regarding "loaded miles" (over the road deliveries), that his loaded miles were comparable to the other leased drivers under Clement, but that his loaded miles were reduced and were no longer comparable to the other drivers under me. Two pages of handwritten numbers are provided, but no explanation as to the manner of calculation or source of the numbers is provided, and I am unable to determine from my own review and analysis of the driver logs how they were arrived at.

4.  I have reviewed and analyzed the GAF Fleet Weekly Driver's Records ("driver logs") for all four leased drivers from January 1, 2001 through September 2, 2001, during which time Ben Clement was acting as the Supervisor of the Shipping Department. True and accurate copies of these driver logs are attached hereto as Attachment 4. These driver logs were produced in their entirety to David Knight during the course of discovery.

5.  I have also reviewed and analyzed the GAF Fleet Weekly Driver's Records for all four leased drivers from September 3, 2001 to June 23, 2002, during which time I was the Supervisor of the Shipping Department. True and accurate copies of these driver logs are attached hereto as Attachment 5. These driver logs were produced in their entirety to David Knight during the course of discovery.

6.  As detailed below and in the summary chart entitled "Number of Loaded Miles Under Former Acting Supervisor (1/1/01 - 9/2/01)," attached hereto as Attachment 1, under Ben

Clement, David Knight had the second highest total of loaded miles amongst the four drivers. Specifically, the number of loaded miles per driver was as follows:

| | NUMBER OF LOADED MILES UNDER FORMER ACTING SUPERVISOR (1/1/01 - 9/2/01) | | | |
|---|---|---|---|---|
| | **DENNIS FORINASH** | **LAWRENCE MURPHY** | **DAVID KNIGHT** | **LEONARD VAN CISE** |
| January 2001 | 1913 | 5032 | 3382 | 3405 |
| February 2001 | 1720 | 5139 | 4251 | 3150 |
| March 2001 | 2604 | 4744 | 2526 | 2292 |
| April 2001 | 3712 | 4419 | 2773 | 1549 |
| May 2001 | 3425 | 3944 | 2797 | 535 |
| June 2001 | 3387 | 5123 | 3003 | 2014 |
| July 2001 | 3166 | 3488 | 1792 | 1468 |
| August 2001 | 2569 | 3395 | 2663 | 2071 |
| **TOTAL:** | **22,496** | **35,284** | **23,187** | **16,484** |
| **MONTHLY AVERAGE:** | **2812** | **4410.5** | **2898.4** | **2060.5** |

7.   As detailed below and in a second summary chart entitled "Number of Loaded Miles Under Joe Rinderle (9/3/01 - 6/23/02)," also attached hereto as Attachment 1, after I became Supervisor of the Shipping Department, David Knight's loaded miles continued to be the second highest out of the four leased drivers. Specifically, the number of loaded miles per driver was as follows:

| | DENNIS FORINASH | LAWRENCE MURPHY | DAVID KNIGHT | LEONARD VAN CISE |
|---|---|---|---|---|
| **NUMBER OF LOADED MILES UNDER JOE RINDERLE (9/3/01 - 6/23/02)** | | | | |
| September 2001 | 1590 | 2347 | 2855 | 2103 |
| October 2001 | 3799 | 1977 | 1319 | 1867 |
| November 2001 | 3133 | 3359 | 2403 | 1922 |
| December 2001 | 1208 | 1578 | 1410 | 1211 |
| January 2002 | 1046 | 2982 | 1605 | 778 |
| February 2002 | 2196 | 4374 | 3256 | 3217 |
| March 2002 | 540 | 2832 | 1958 | 1971 |
| April 2002 | Driver logs from 4/1/02 to 4/28/02 cannot be located. April 2002 is omitted from calculation of average below. | | | |
| May 2002 | 1754 | 2941 | 1509 | 1467 |
| June 2002 | 1330 | 1256 | 848 | 1145 |
| **TOTAL:** | **16,596** | **23,646** | **17,163** | **15,681** |
| **MONTHLY AVERAGE:** | **1844.0** | **2627.3** | **1907** | **1742.3** |
| **DIFF. FROM FORMER SUPERVISOR:** | **-968** | **-1783.2** | **-991.4** | **-318.2** |

8.   As detailed above and on Attachment 1, <u>all</u> four leased drivers were subject to a reduction of loaded miles after I became the Shipping Department Supervisor. Specifically, the average of loaded miles per month was reduced as follows:

    Lawrence Murphy  -1,783.2

    David Knight  - 991.4

    Dennis Forinash  - 968.0

    Leonard Van Cise  - 318.2

9. The driver logs confirm that David Knight was <u>not</u> treated less favorably than the other drivers. Deliveries and shuttles were either assigned by myself, or the drivers occasionally chose their deliveries themselves. Regardless, at no time did I discriminate against David Knight on the basis of his race with regard to delivery assignments.

10. I have reviewed and analyzed the time records for all four leased drivers from weeks ending January 7, 2001 through September 2, 2001, during which time Ben Clement was acting as the Supervisor of the Shipping Department. True and accurate copies of these records are attached hereto as Attachment 6. These records were produced in their entirety to David Knight during the course of discovery.

11. I have also reviewed and analyzed the time records for all four leased drivers from weeks ending September 9, 2001 through June 23, 2002, during which time I was the Supervisor of the Shipping Department. True and accurate copies of these records are attached hereto as Attachment 7. These records were produced in their entirety to David Knight during the course of discovery.

12. All four of the leased drivers were paid by the hour, regardless of whether he was engaged in "loaded miles" (over the road deliveries) or performing local shuttles.

13. A summary chart of the hours worked by all four leased drivers when Ben Clement was acting as the Supervisor of the Shipping Department is attached hereto as Attachment 2 and is entitled "Leased Driver Hours Under Former Acting Supervisor (1/1/01 - 9/2/01)." As detailed therein, under Clement, Knight's average hours were <u>third out of four drivers</u>. The average hours worked per week was as follows:

### LEASED DRIVER HOURS UNDER
### FORMER ACTING SUPERVISOR (1/1/01 - 9/2/01)

|  | DENNIS FORINASH | LAWRENCE MURPHY | DAVID KNIGHT | LEONARD VAN CISE |
|---|---|---|---|---|
| **TOTAL:** | 2250.5 | 2501.3 | 2144.0 | 2046.5 |
| **WEEKLY AVERAGE:** | 64.3 | 71.5 | 61.3 | 58.5 |

(See complete chart of "Leased Driver Hours Under Former Acting Supervisor [1/1/01 - 9/2/01]" attached hereto as Attachment 2).

14. A summary chart of the hours worked by all four leased drivers when I became the Supervisor of the Shipping Department is attached hereto as Attachment 3 and is entitled "Leased Driver Hours Under Joe Rinderle (9/3/01 - 6/23/02)." As detailed therein, under me, Knight's average hours <u>moved up from third to second out of the four drivers</u>. The average hours worked per week was as follows:

### LEASED DRIVER HOURS UNDER
### JOE RINDERLE (9/3/01 - 6/23/02)

|  | DENNIS FORINASH | LAWRENCE MURPHY | DAVID KNIGHT | LEONARD VAN CISE |
|---|---|---|---|---|
| **TOTAL:** | 2410.0 | 2661.35 | 2485.5 | 2214.55 |
| **WEEKLY AVERAGE:** | 57.4 | 63.4 | 59.2 | 52.7 |
| **DIFF. FROM FORMER SUPERVISOR:** | -6.9 | -8.1 | -2.1 | -5.8 |

(See complete chart of "Leased Driver Hours Under Joe Rinderle (9/3/01 - 6/23/02)" attached hereto as Attachment 3).

15. As detailed above and on Attachments 2 and 3, during the time I was the Supervisor of the Shipping Department, <u>all</u> the leased drivers' hours were reduced, but Knight's average hours were reduced <u>the least</u> of all four drivers. Specifically, the drivers' average hours per week were reduced as follows:

| | |
|---|---|
| Lawrence Murphy | - 8.1 |
| Dennis Forinash | - 6.9 |
| Leonard Van Cise | - 5.8 |
| David Knight | - 2.1 |

(See complete chart of "Leased Driver Hours Under Joe Rinderle (9/3/01 - 6/23/02)" attached hereto as Attachment 3).

16. The time records, like the driver logs, confirm that David Knight was <u>not</u> treated less favorably than the other drivers after I became the Supervisor of the Shipping Department. At no time did I discriminate against David Knight on the basis of his race with regard to hours.

17. David Knight has alleged that on several occasions, Leonard Van Cise, a non-African American leased driver, failed to call in to advise he would not report for work but was not terminated or reassigned. As the Supervisor of the Shipping Department, the leased drivers contacted me when unable to report to work, and I was aware if and when a driver did not report to work. Contrary to Knight's allegation, there was no time when Leonard Van Cise failed to report to work and did not call in to advise that he would not be present and why he would not be present.

- 8 -

18. At no time did I refuse to permit David Knight to take free shingles on the basis of his race.

                                                                   _____

                                                                                Joe Rinderle

Sworn to and subscribed before me
this 2ND day of September, 2005

_____
Notary Public

```
Notarial Seal
Laurie A. Skelly, Notary Public
City of Erie, Erie County
My Commission Expires Oct. 31, 2006
```

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Affidavit of Joe Rinderle was served upon the following counsel for plaintiff David H. Knight, via First-Class United States Mail, this 2nd day of September 2005:

Timothy McNair, Esq.
821 State Street
Erie, PA 16501-1316

s/ Lisa Smith Presta
Lisa Smith Presta